# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————————————

## No.  22-2327

———————————————

## DONALD JACOBS,

### Plaintiff/Appellant,

### v.

## COUNTY OF BUCKS, JOSEPH KHAN and MARGARET MCKEVITT,

### Defendants/Appellees.

———————————————

## BRIEF OF APPELLANT AND VOLUME ONE OF APPENDIX
### (Pages 1 to 32)

———————————————

**Appeal from the Order of Judgment entered in the United States District Court for the Eastern District of Pennsylvania on June 22, 2022 at Civil Action No. 2:20-cv-4016**

———————————————

**Wayne A. Ely, Esquire**
**59 Andrea Drive**
**Richboro, PA 18954**
**(215) 801-7979**
**Attorney for Appellant**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                    iv.

I.    JURISDICTIONAL STATEMENT                                          1.

    a.    Basis for District Court's Jurisdiction                    1.

    b.    Basis for Court of Appeals' Jurisdiction                   1.

    c.    Timeliness of Appeal                                       1.

    d.    Finality                                                   2.

II.   STATEMENT OF RELATED CASES
    AND PROCEEDINGS                                                  3.

III.  STATEMENT OF ISSUES PRESENTED
    FOR REVIEW                                                       4.

IV.   STATEMENT OF THE CASE                                            5.

    a.    Procedural History                                         5.

    b.    Factual Background                                         5.

    *a.    Facts Admitted by Defendants in their Answer
        and Statement of Material Facts*                           5.

    *b.    The FMLA Approval and Cancer Surgery*                      8.

    *c.    The Administrative Leave and Termination*                  9.

        *c (1) – Discussion of Plaintiff's leave and
        surgery at the February 21, 2020 meeting
        at which he was placed on administrative leave*           11.

        *c (2) – The "investigation"*                             12.

i

*c (3) The disputed Brian Hessenthaler "directive"*      14.

*d.*    *The "bagful of reasons" asserted in Plaintiff's termination letter*      19.

*e.*    *The reasons for Plaintiff's termination as explained (or not explained) by Defendant McKevitt*      21.

*f.*    *The reasons for Plaintiff's termination as explained (or not explained) by Defendant Kahn*      29.

*g.*    *Defendant McKevitt's false testimony at Plaintiff's unemployment hearing*      31.

V.    SUMMARY OF ARGUMENT      35.

VI.    ARGUMENT      37.

a.    Standard of Review      37.

b.    Summary Judgment Should Have Been Denied on Plaintiff's FMLA Retaliation Claim      39.

i.    The law relating to FMLA retaliation claims.      40.

ii.    Adverse employment action is established.      41.

iii.    Plaintiff's invocation of medical leave is established.      41.

iv.    Causation was established.      42.

v.    Pretext was established.      46.

II.    Summary Judgment Should Have Been Denied on Plaintiff's Section 1983 Claim      55.

III.    The District Court Should Not Have Dismissed
Plaintiff's State Law Whistleblower Claim                58.

VII.   CONCLUSION                                                          59.

CERTIFICATES                                                       Appended.

VOLUME 1 OF APPENDIX                                     Appended.

_____

# TABLE OF AUTHORITIES

*Statutes/Rules*                                                    **Page(s):**

28 U.S.C. § 1291                                                    1,2

28 U.S.C. § 1331                                                    1

29 U.S.C. § 2615                                                    40

42 U.S.C. § 1983                                                    2,8

Fed. R. App. P. 4                                                  1

Fed. R. Civ. P. 8                                                  57

Fed. R. Civ. P. 56                                                37,39


*Case Authorities*

*Albright v. Oliver*
975 F.2d 343 (7th Cir. 1992)                                      57

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 91 L. Ed. 2d 202, 106 S.Ct. 2505 (1986)           37,38

*Atchison v. Sears*
666 F. Supp. 2d 477, 492 (E.D. Pa. 2009)                         45

*Bartholomew v. Fischl*
534 F. Supp. 161 (E.D. Pa. 1981)                                 57

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*
974 F.2d 1358 (3rd Cir. 1992),
*cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993)            38

*Board of Regents v. Roth*
408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)           56

*Brady v. Gebbie*
859 F.2d 1543 (9th Cir. 1988),
*cert. denied,* 489 U.S. 110, 109 S. Ct. 1577,
103 L. Ed. 2d 943 (1989)                                              56

*Brosseau v. Haugen*
543 U.S. 194, 160 L.Ed. 2d 583, 125 S.Ct. 596 (2004)                 38

*Burlington Indus. Inc. v. Ellerth*
524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)              41

*Coolspring Stone Supply v. American States Life Ins. Co.*
10 F.3d 144 (3rd Cir. 1993)                                          37

*Dillon v. Coles*
746 F.2d 998, 1003 (3d Cir. 1984)                                    46

*Eastman Kodak Co. v. Image Technological Services, Inc.*
504 U.S. 451, 119 L. Ed. 2d 265, 112 S.Ct. 2072 (1992)              38

*Eddy v. V.I. Water and Power Auth.*
256 F.3d 204 (3d Cir. 2001)                                          57

*Freeman v. McKellar*
795 F. Supp. 733 (E.D. Pa. 1992)                                     56

*Haugh v. Allstate Ins. Co.*
2003 U.S. App. LEXIS 3721 (3rd Cir. February 28, 2003)              37

*Jalil v. Avdel Corp.*
873 F.2d 701 (3d Cir. 1989)                                         46

*Jones v. School Dist. Of Philadelphia*
198 F.3d 403 (3d Cir. 1999)                                         39

*Karnes v. Skrutski*
62 F.3d 485 (3d Cir. 1995)                                          57

*Lauren W. ex rel. Jean W. v. DeFlaminis*
480 F.3d 259 (3d Cir. 2007)                                    43

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*
691 F.3d 294 (3d Cir. 2012)                                 40,41,42

*Long v. Spalding Auto. Inc.*
337 F. Supp. 3d 485 (E.D. Pa. 2018)                           43

*Matcak v. Frankford Candy & Chocolate Co.*
136 F.3d 933 (3d Cir. 1997)                                    40

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
475 U.S. 574, 89 L.Ed. 2d 538, 106 S. Ct. 1348 (1986)         38

*McDonnell Douglas Corp. v. Green*
411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)        39,40

*Northview Motors, Inc. v. Chrysler Motors Corp.*
227 F.3d 78, 87-88 (3rd Cir. 2000)                            37

*Owen v. Independence*
445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980),
*reh'g denied,* 446 U.S. 993, 100 S. Ct. 2979,
64 L. Ed. 2d 850 (1980)                                        57

*Ross v. Gilhuly*
755 F.3d 185 (3d Cir. 2014)                                    41

*Stewart v. Rutgers*
120 F.3d 426 (3d Cir. 1997)                                   38,39

*Tomasso v. Boeing Co.*
445 F.3d 702 (3d Cir. 2006)                                    47

*Walden v. St. Gobain Corp.*
323 F. Supp. 2d 637 (E.D. Pa. 2004)                           38

*Wisconsin v. Constantineau*
400 U.S. 433, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971)                56

_____

# I. JURISDICTIONAL STATEMENT

## a.    Basis for District Court's Jurisdiction

The United States District Court for the Eastern District of Pennsylvania properly exercised subject-matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction) because the instant action arose under the laws of the United States (specifically, the Family and Medical Leave Act).

## b.    Basis for Court of Appeals' Jurisdiction

The United States Court of Appeals for the Third Circuit may properly exercise jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291 (final decisions of District Courts) because the Order appealed from (granting summary judgment and dismissing the instant action) disposed of all claims of the parties and is final and appealable for purposes of 28 U.S.C. § 1291.

## c.    Timeliness of Appeal

The instant appeal is timely because it was filed within thirty (30) days of the District Court's entry of summary judgment, as required by Fed. R. App. P. 4(a). Judgment was entered in favor of Defendants on June 22, 2022. Appx0007 (docket entry 53). The Notice of Appeal was filed 27 days later, on July 19, 2022. Appx0008 (docket entry 54).

**d.**    **<u>Finality</u>**

The instant appeal is from a final order/judgment entering summary judgment and disposing of all the parties' claims. *See* 28 U.S.C. § 1291.

## II.    <u>STATEMENT OF RELATED CASES AND PROCEEDINGS</u>

There are no related cases or proceedings.

## III.    <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.    Did the District Court err in entering summary judgment on Plaintiff's FMLA retaliation claim?

<u>Suggested Answer</u>:  Yes.

Appellant asserts that this issue was preserved by his opposition to Appellees' motion for summary judgment and that no further preservation of this issue was necessary.

2.    Did the District Court err in entering summary judgment on Plaintiff's Section 1983 claim?

<u>Suggested Answer</u>:  Yes.

Appellant asserts that this issue was preserved by his opposition to Appellees' motion for summary judgment and that no further preservation of this issue was necessary.

3.    Did the District Court err in entering summary judgment on Plaintiff's state law Whistleblower claim without prejudice?

<u>Suggested Answer</u>:  Yes.

Appellant asserts that this issue was preserved by his opposition to Appellees' motion for summary judgment and that no further preservation of this issue was necessary.

# IV.  **STATEMENT OF THE CASE**

## a.  **Procedural History**

Plaintiff filed a civil action Complaint on August 18, 2020 asserting claims of FMLA retaliation, violations of the Pennsylvania Whistleblower Law, and violations of 42 U.S.C. § 1983.  Appx0002 (docket entry 1).  Defendants answered the Complaint on December 18, 2020, Appx0003 (docket entry 7) and discovery commenced.  After completion of discovery, Defendants filed a motion for summary judgment on October 20, 2021. Appx0005 (docket entry 27).  Plaintiff responded on November 12, 2021. Appx0005 (docket entry 30).  Defendants filed a Reply on November 22, 2021.  Appx0006 (docket entry 37).  The District Court granted summary judgment to Defendants on June 22, 2022.  Appx0007 (docket entries 52 and 53).  This timely appeal followed on July 19, 2022.  Appx0008 (docket entry 54).

## b.  **Factual Background**

As will be demonstrated below, Plaintiff has adduced ample evidence to merit denial of Defendant's summary judgment motion.

### a.  *Facts Admitted by Defendants in their Answer and Statement of Material Facts*

Plaintiff Donald Jacobs (hereinafter "Plaintiff") is a stage 4 cancer survivor who was employed by Defendant Bucks County from July 5, 2005 through March

2, 2020 (a period of 14 years and 8 months). Appx0033, Appx 0048 (¶ 4), Appx 0035, and Appx 0049 (¶18). Defendant Bucks County is a county of the second class, a political subdivision, and a governmental entity in the Commonwealth of Pennsylvania. Appx0035, Appx0049 (¶ 13). Defendant Bucks County employed approximately 2,400 individuals in a 75-mile radius at all times relevant hereto. Appx0035, Appx0049 (¶ 17).

Plaintiff served as Defendant Bucks County's Senior IS [Information Services] Manager from July 5, 2005 through April of 2006. Appx0034, Appx0048 (¶ 6). After April, 2006, Plaintiff served as Defendant County of Bucks' Chief Information Officer for a period of fourteen (14) years, or until March 2, 2020. Appx0034, Appx 0047 (¶ 6) Plaintiff last earned a salary of $127,783.00 *per annum*. Appx0034, Appx 0047 (¶ 9).

Defendant Joseph Khan ("hereinafter "Defendant Khan") has been employed by Defendant Bucks County as its Solicitor since his appointment to that position on January 6, 2020. Appx0035, Appx0049 (¶ 22). In his role as Solicitor, Defendant Khan serves as Defendant Bucks County's chief legal officer, manages Defendant Bucks County's Legal Services Division, and reports directly to Defendant Bucks County's three-member Board of Commissioners. Appx0035, Appx0049 (¶ 23).

Defendant Margaret McKevitt (hereinafter "Defendant McKevitt") has been employed by Defendant Bucks County as its Chief Operating Officer since her

appointment to that position on January 6, 2020. Appx0036, Appx0049 (¶ 28).   In her role as Chief Operating Officer, Defendant McKevitt serves as Defendant Bucks County's highest-ranking non-elected official and reports directly to its three-member Board of Commissioners. Appx0036, Appx0049 (¶ 29).

On January 8, 2020, Plaintiff emailed former Chief Operating Officer Brian Hessenthaler, CFO David Boscola, and various other County personnel stating that he would  need  to be out of the office on various dates for cancer treatment beginning on January 14, 2020. Appx0078 ¶ 68, *see also* Appx0668 (January 8, 2020 email chain). On January 9, 2020, Plaintiff submitted a request for intermittent FMLA leave to the County's health insurance claims processor, Sedgwick. Appx078 (¶ 70), *see also* Appx0673.

Plaintiff received a communication confirming approval of a Family and Medical Leave request by Defendant Bucks County on January 17, 2020. Appx0038, Appx0050 (¶ 42).  Plaintiff was approved for intermittent Family and Medical Leave. Appx0038, Appx0050 (¶ 43).  A January 17, 2020 request approval letter granted Plaintiff intermittent Family and Medical Leave for the period covering January 9, 2020 through July 9, 2020. Appx0038, Appx0050 (¶ 46).

Plaintiff met with Defendant Khan, Defendant McKevitt and Virginia Hardwick (an attorney in the Bucks County Solicitor's Office) on February 21, 2020. Appx0039, Appx0051 (¶ 48).  He was placed on administrative leave at the

conclusion of the February 21, 2020 meeting.  Appx0039, Appx0051 (¶ 50); *see also* Appx1196 (administrative leave statement).  Plaintiff's employment was involuntarily terminated by Defendant Bucks County on March 2, 2020. Appx0039, Appx0051 (¶ 51); *see also* Appx1197 (termination letter).  Plaintiff's termination as an employee of the County of Bucks was approved by the Board of Commissioners on March 18, 2020 (14 days after his termination).   Appx0039, Appx0051 (¶ 52).

John Regula replaced Plaintiff as Chief Information Officer on August 13, 2020.  Appx0041, Appx 0051 (¶ 65).

### b.    *The FMLA Approval and Cancer Surgery*

Plaintiff's request for FMLA leave was approved on January 17, 2020. Appx1191.  On January 8, 2020, Plaintiff advised several agents of Defendant via electronic mail that he would require leave on several days for upcoming cancer surgery, including but not limited to:

a.    Tuesday, January 14, 2020;

b.    Wednesday, January 15, 2020;

c.    Tuesday, January 28, 2020;

d.    Friday, February 14, 2020;

e.    Thursday, April 23, 2020.

Appx1194.

8

*c.*    ***The Administrative Leave and Termination***

Defendants placed Plaintiff on administrative leave on February 21, 2020.

Appx 1196 and later fired Plaintiff on March 2, 2020. Appx1197.

The day Plaintiff was placed on administrative leave, he met with Defendant

Khan, Defendant McKevitt and Virginia Hardwick (an attorney in the Bucks

County Solicitor's Office). Appx0039, Appx0051 (¶ 48).   He was placed on

administrative leave at the conclusion of that February 21, 2020 meeting.

Appx0039, Appx0051 (¶ 50); *see also* Appx1196 (administrative leave statement).

Defendant McKevitt testified that she has served as the Chief Operating

Officer for Defendant County of Bucks since February 14, 2020.  Appx1218 (lines

17-24).  Based on this testimony, she assumed her role 28 days after Plaintiff's

FMLA approval under the prior County administration.  However, Defendants have

also admitted in their Answer (Exhibit 2 hereto) she assumed her role on January

6, 2020.  Appx0036, Appx0049 (¶ 28).   This was only *3 days before* Plaintiff's

FMLA request under the prior County administration.

Defendant McKevitt also testified that she became the County's interim

Chief Operating officer on February 14, 2020 and its permanent Chief Operating

Officer in March of 2020. Appx1218 (lines 23-24) and Appx1219 (lines 1-3).

Defendant McKevitt claims she first learned there were alleged "issues" with

Plaintiff's employment during the week of February 17, 2020.  Appx1220 ( lines 9-

24). She learned of these alleged "issues" with Plaintiff's employment from Defendant Joseph Khan. Appx 1220 (lines 18-24). Defendant McKevitt testified that Defendant Khan advised her that " . . . there was a company that was hired by the County through Don Jacobs and that the company that was hired is being investigated by the state." Appx1221 (lines 12-16). Defendant McKevitt could recall nothing else Defendant Khan told her about Plaintiff, Appx1222 (lines 22-24) and Appx1223 (lines 1-2), and could recall no one but Defendant Khan who told her about the alleged "issue" regarding Plaintiff at any time. Appx1222 (lines 3-14). She does not know how Defendant Khan learned of the alleged "issue" regarding Plaintiff . Appx1221 (lines 18-21).

Shortly before she assumed her role as Chief Operating Officer (*i.e.,* shortly before January 6, 2020), Defendant McKevitt also leaned "from a co-worker" that Plaintiff was suffering from cancer. Appx1223 (lines 22-24) and Appx1224 (lines 1-2). She testified she does not recall the identity of the "co-worker" who advised her of Plaintiff's cancer. Appx1224 (lines 7-8). Defendant McKevitt learned that Plaintiff was "out because he was getting treatment." Appx1224 ( lines 9-12). She does not specifically recall when she first learned Plaintiff was out on FMLA leave. Appx1224 ( lines 19-21).

It is established that Defendant McKevitt was aware Plaintiff was on medical leave before she assumed her role as Chief Operating Officer on either January 6,

2020 or February 14, 2020. *See supra.* She was therefore aware Plaintiff was on medical leave before he was placed on administrative leave at the February 21, 2020 meeting. Defendant Kahn was also aware of Plaintiff's leave because Plaintiff testified he had told Defendant Kahn about it. Appx1788 (lines 12-17).

### *c (1) – Discussion of Plaintiff's leave and surgery at the February 21, 2020 meeting at which he was placed on administrative leave*

Three of the four participants in the February 21, 2020 meeting claim not to remember if Plaintiff's medical leave or surgery were discussed. However, Plaintiff has testified that these topics *were* discussed. To wit:

a.  Defendant McKevitt *does not recall* if Plaintiff's upcoming cancer surgery (scheduled for three days after the meeting) or his medical leave came up as topics in the February 21, 2020 meeting in which Plaintiff was placed on administrative leave. Appx1236 (lines 23-24) and Appx1247 (lines 1-4);

b.  Asked if Plaintiff mentioned his medical leave or his cancer during the February 21, 2020 meeting, Defendant Kahn testified he was *"not certain,"* Appx1389 (lines 8-11). (emphasis added). Asked if Plaintiff mentioned his upcoming cancer surgery (scheduled to occur three days after the meeting) during the February 21, 2020 meeting, Defendant Kahn testified *"I don't remember."* Appx1389 (lines 17-22) (emphasis added).

11

c.    Virginia Hardwick also testified that she did not recall if Plaintiff discussed his medical condition at the February 21, 2020 meeting but admits it is "possible" the issue came up. Appx1536 (line 24) and Appx1527 (lines 1-7). She also conceded the issue may have been discussed even though it does not appear in her notes of the meeting.  Appx1527 (lines 8-14);

d.    Plaintiff has testified that his FMLA leave and upcoming cancer surgery *were discussed* in the February 21, 2020.  Appx1658 (lines 9-16) and Appx1786 (lines 15-16).  When the topic came up, Defendant McKevitt *rolled her eyes*.  Appx1787 (lines 1-8).

In light of the fact that Plaintiff specifically recalls discussing his FMLA leave and his medical condition at the February 21, 2020 meeting, and given the fact that none of the other meeting participants can rule out the fact that it was discussed, Plaintiff's testimony on this issue is uncontradicted.  Plaintiff was also told he was permitted to say only "yes" or "no" by Defendant Khan during the February 21, 2020 meeting - and was not permitted to explain his answers.  Appx1638 ( lines 20-24) and Appx 1639 (lines 1-2).

### c (2) – The "investigation"

Defendant McKevitt does not specifically recall what (if anything) she did when she learned of the alleged "issue" regarding Plaintiff from Defendant Khan. Appx1225 (19-22).  She testified that she and Defendant Khan performed an

"investigation" and then placed Plaintiff on administrative leave.  Appx 1226 (lines 6-7).  She never spoke to Plaintiff during the "investigation." Appx1228 (lines 20-24).  In fact, she does not remember *anyone* she spoke to during the "investigation," Appx1228 (lines 1-5), or the documents she looked at during the "investigation, describing them only as "emails."  Appx1229 (lines 1-5).

After the "investigation," Defendant McKevitt testified that she and Defendant Khan spoke and made a "determination" to place Plaintiff on administrative leave.  Appx1226 (lines 20- 24) ("[w]e made the determination"); *see also* Appx1230 (lines 1-5).  Defendant McKevitt later testified she made the decision to put Plaintiff out on administrative leave.  Appx1230 (lines 4-10); *see also* Appx1307 (Unemployment Hearing Transcript)(lines 9-11). Defendant Kahn also claims Defendant McKevitt had the ultimate authority to recommend Plaintiff's termination, although he was involved in the decision to terminate by proving "recommendations" and advice.  Appx1377 (lines 10-19, and Appx1378 (lines 1-4).

Plaintiff's termination letter was written on March 2, 2020.  Appx1233 (lines 13-16). Plaintiff's termination was recommended by Defendant McKevitt and Defendant Kahn and approved by the Commissioners on March 18, 2020 – 16 days after the termination letter was issued. Appx1234 (lines 4-15). Defendant McKevitt testified she could not recall any case where a termination

recommendation was not approved by the commissioners.  Appx1234 (lines 4- 15).

### c (3) The disputed Brian Hessenthaler "directive"

Defendant McKevitt claims Plaintiff was fired for failing to follow a directive from Brian Hessenthaler, the former Chief Operating Officer, to end a contract with Cyber Risk Services.  Appx1236 (line 24) and Appx1237 (lines 1-7); *see also* Appx1307, lines 18-24.  The alleged "directive" was supposedly given in the third or fourth quarter of 2019. Appx1237 (lines 11-12).

Brian Hessenthaler has not appeared to testify on behalf of Defendants in this case via affidavit or deposition *or to confirm he ever gave an order to Plaintiff to end the contract.*  All statements allegedly made by Brian Hessenthaler, referenced by other witnesses,  are hearsay, which is flatly inadmissible on a motion for summary judgment. *See Smith v. City of Allentown,* 589 F.3d 684, 693 (3d Cir. 2009) ("[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment").  Defendants have also produced nothing in writing confirming the alleged "directive."  There is no admissible evidence of the alleged "directive" to Plaintiff from Brian Hessenthaler.  Defendants' Rule 26 Disclosures asserted that Brian Hessenthaler " . . . may be reached through the County law department." Appx1291. Yet he did not testify on behalf of Defendants.

Plaintiff has denied he ever received a direct order to end the Cyber Risk

contract from Hessenthaler and has explained that an RFP [Request for Proposal] was necessary (and was in process) to find a replacement for Cyber Risk Services. Appx1647 (lines 6-11) and Appx1615 (lines 16-19).  Asked if he ever received a direct order to end the contract, Plaintiff responded that " I don't recall him giving me strict instructions.  I recall him asking me to find a replacement, hence the RFP [Request for Proposal]." Appx1647 (lines 7-13).

Asked he ever failed to do what Hessenthaler told him to do, Plaintiff testified that "I do not recall not doing what Mr. Hessenthaler told me to do. *I did exactly what he told me to do* and *it took about a year.* We had to write an RFP." Appx1647 (lines 16-20) (emphasis added). No memoranda, electronic mails, or any other documents have been produced by Defendants documenting *any direct order* from Hessenthaler to Plaintiff to end the Cyber Risk contract.

Plaintiff has also denied he ever received a direct order to end the contract from Dave Boscola.  Appx1653 (lines 1-14); *see also* Boscola's version of events at Appx1469 (lines 10-16).  Boscola, Defendant Bucks County's Chief Financial Officer, was Plaintiff's direct supervisor from October of 2010 through his firing, *see* Appx1451 (lines 7-8) and Appx1452 (lines 1-6).  Boscola testified he has never disciplined Plaintiff for any reason and also testified that he has no emails or other written directive(s) evidencing an order for Plaintiff to end the Cyber Risk contract. Appx1461 (lines 4-10).

As late as August 22, 2019, Defendant Bucks County's commissioners had passed a resolution *continuing the very contract Defendants now claim Plaintiff was responsible for terminating.* Appx1462 (lines 6-11). The reason for this, per Boscola, was that commissioners decided it was "prudent" to continue the contract. Appx1462 (lines 21-23). Hessenthaler was involved in that decision as well. Appx1463 (lines 1-6). Asked why the contract was continued, Boscola provided an explanation that confirms Plaintiff's version of events (*see infra*), stating that "[t]he county, I guess, *was in need of those services for cybersecurity protection.* The county has to go through a -- somewhat of a lengthy process to secure a contract with somebody. And this - that was kind of like a segue to get from one consultant to another." Appx1463 (lines 14-19) (emphasis added).

Boscola agreed that no one but Cyber Risk Services was providing computer security services to Defendant Bucks County at the time the commissioners continued the contract. Appx1463 (lines 20-25) and Appx1464 (line 1). Boscola agreed Defendant Bucks County has previously experienced cyberattacks and that:

> Q.    [Computer security] is not something you want to just stop having,
>                   is it?
>
> A.    I would think not.

Appx1464 (lines 1-8).

Plaintiff has testified that "[w]e could not sustain the security of our systems

without somebody providing [cybersecurity] services." Appx1652 (lines 20-23). He

also testified as follows:

> Q.    When Brian -- when you were discussing trying
> to end the contract with Ayers, were you ever
> given a specific timeframe to do it in?
>
> A.    *No.* We couldn't get rid of that -- I mean, look at the
> world. We can't get rid of cyber security without
> another protected net underneath it. *We had to get*
> *something else in place first.* A solicitor got that.
> That'd be like I mean, that'd be like saying I don't like
> my lawyer; I'm going to go get another lawyer. But in
> the meantime you're done and I'm just going to
> flounder on my own without an attorney.
>
> Q.    Did Hessenthaler understand that?
>
> A.    He did. *He got it one hundred percent.*
>
> Q.    Did Boscola understand that?
>
> A.    I have no idea. He wasn't there.

Appx1789 (lines 18-24) and Appx1790 (lines 1-15) (emphasis added).

Boscola has also testified that Plaintiff *could not have unilaterally ended the*
*Cyber Risk contract in any event.* Appx1467 *(*lines 10-11). Plaintiff also confirmed
that his job did not involve either writing or authorizing any contracts for Defendant
Bucks County. Appx1582 (lines 17-18). Plaintiff testified that "[e]verything we
did required purchasing review, finance review, legal review, chief operating
review and commissioner approval at a public meeting." Appx 1583 (lines 8-12).
He also confirmed that he signed off on invoices but that " . . . there's a lot of other

people that have to go from there before it gets paid." Appx1706 (lines 6-19).  He never knew he could approve "anything" unilaterally.  Appx1707 (lines 3-4).

At the time of his deposition, Boscola did not even know why Plaintiff (his direct report)  had been fired, and testified that he was not part of the firing discussions with Defendant McKevitt or Defendant Kahn.  Appx1466 (lines 11-18).

Boscola claims he and Hessenthaler discussed Plaintiff's termination *a year before* he was actually fired, that he recommended Plaintiff be fired, and that Hessenthaler *did not* fire Plaintiff. Appx1468 (lines 6-13).  Hessenthaler also decided *to continue* the Ayers contract.  *Id.* In other words,  Plaintiff was fired by a new COO (just after requesting and obtaining medical leave) for not ending a contract after *the prior COO* had decided to *continue* that contract - and had also decided *not* to fire him over it.

Plaintiff has also testified that "[w]e were directed by the chief solicitor at the time do not make any changes until the RFP was completed." Appx1748 (lines 11-13).  Moreover, Ayres had assured Hessenthaler and other county employees he was permitted to do cybersecurity work for the county.  Plaintiff testified that "[w]e were  all told from Brian [Hessenthaler] down that he had a letter  from  his  boss saying  that he could work from wherever he needed to work, do  whatever  he needed to do and call his own hours." Appx155 (lines 6-12).

The following exchange occurred at Boscola's deposition:

> Q.    How is it Mr. Jacobs' fault that the contract wasn't terminated?
>
> A.    *It's not his fault that* it wasn't terminated.
>
> Q.    How is it his fault that the county continued to work with Robert Ayers as late as August of 2019, which is the last resolution you gave me today?
>
> A.    Could you repeat the question?
>
> Q.    How was it Mr. Jacobs' fault that the county continued to work with Robert Ayers as late as fall of 2019?
>
> A.    It -- it -- it's not -- *it wasn't his decision* to continue the contract with Robert Ayers.
>
> Q.    So why would you recommend his termination based on that?
>
> A.    Because he entered into the contract with Robert Ayers.

Appx1470 (lines 2-19)(emphasis added).

### d.    *The "bagful of reasons" asserted in Plaintiff's termination letter*

Plaintiff's March 2, 2020 termination letter identifies "multiple policy violations" that allegedly caused his separation.  The letter purports to identify at least *ten.*  Appx1197 and Appx1198.   The termination letter identifies issues "including but not limited to" the following:

> HR Policies #1.0 County Work Rules: #1: Dishonesty; #2: Falsification or misrepresentation and/or providing incomplete, misleading or incorrect information; #10: Insubordination,

including refusal to perform work required by a supervisor; #20: Failure to report illegal/inappropriate activity; #21 : Refusing or failing to actively participate in an investigation in good faith ... ; #27: Unsatisfactory work performance as governed by departmental standards; #34: Violation of any HR Policies or departmental policies/procedures as noted in departmental standard operating procedures (SOP), handbook, manual, etc. #45: Action in any way that is detrimental to employee morale. #48: Any action/conduct that can be viewed as conduct unbecoming to a public employee . , . ; #58: Refusing to obey instructions properly issued by an employee's supervisor pertaining to work; #63: Failure to abide by the County established Code of Conduct policy. HR Policies #32.0 Code of Conduct

Appx1197 and Appx1198.

The March 2, 2020 termination letter also states that " . . . this termination is for each of the above listed violations, *separately and independently of each other.* In other words, each violation listed above, independent of the others and by itself, constitutes *a wholly separate ground* for your termination."   Appx1197 and Appx1198 (emphasis added).

Defendant McKevitt reviewed the termination letter before it was sent. Appx1246 (lines 1-11),   Appx1253 (lines 4-6), and Appx1266 (lines 15-17). Indeed, the letter was written based on facts allegedly obtained by Defendant McKevitt in her "investigation."   Appx1280 (lines 4-11). Defendant Kahn also reviewed the letter.  Appx1375 (lines 17-19).  Defendant McKevitt also testified that she had input into the contents of the termination letter before it was sent. Appx1246 (lines 15-19).  Indeed, she admitted at Plaintiff's unemployment

compensation hearing that the letter was "sent *at my direction.*" Appx1312 (lines 10-12) (emphasis added). Defendant McKevitt also testified that "[h]uman resources and solicitors [presumably Defendant Kahn, *see supra*] . . ." also had input into the contents of the termination letter before it was sent. Appx1246 (lines 18-19).

Despite the termination letter's assertion that the issues it identifies are each "separate[] and independent[]" and constitute "wholly separate ground[s]" for termination, *see supra*, Appx1197 and Appx1198, Defendant McKevitt testified at her deposition that they were in fact *not separate.* Appx1258 (lines 2-24), Appx1259 (line 1). After a break to speak to counsel, Defendant McKevitt attempted to modify her answer. Appx1262 (lines 19-22). Defendant McKevitt maintained at her deposition that Plaintiff violated *every rule* cited in the termination letter. Appx1262 (lines 23-24) and Appx1263 (lines 1-2). However, her testimony demonstrated that she had no basis for this assertion.

### e.  *The reasons for Plaintiff's termination as explained (or __not__ explained) by Defendant McKevitt*

The March 2, 2020 termination letter accuses Plaintiff of "dishonesty." Appx1197 and Appx1198.

When asked at her deposition what Plaintiff did that was" dishonest," Defendant McKevitt claimed he failed to disclose his relationship with the Robert Ayres, a vendor suspected of working for the County and the State at the same time.

Appx1253 (lines 14-18). Defendant McKevitt contends that Plaintiff told her and the others who attended the February 21 meeting at which he was placed on administrative leave that he and Ayres were *"friends."* Appx1253 (line 24), Appx1254 (lines 1-8), and Appx1268 (lines 16-20) (emphasis added).

This testimony is simply false. Virginia Hardwick, the attorney from the Bucks County Solicitor's Office who attended the February 21, 2020 meeting and took notes during it, documented the fact that Plaintiff said *"no"* when asked if he and Ayres were friends. *See* Hardwick notes at Appx1359.

Defendant McKevitt could recall nothing else Plaintiff said at the meeting about his relationship with Ayres.. Appx1254 (lines 9-15). During her deposition, she also could recall *nothing else* Plaintiff said that would qualify as "dishonesty." Appx1254 (lines 9-15).

Plaintiff also confirmed that he and Ayres were not friends in his deposition. Appx1713 (lines 17-24); Appx1713 (lines 4-5). They didn't even speak regularly. Appx1715 (line 24) and Appx1716 (lines 1-2). Plaintiff first encountered Ayres when he was recommended by the State to assist with defending a cyberattack upon Defendant Bucks County, and did not know he was a state employee at that time. Appx1579 (lines 9-18). Plaintiff did not know Ayres at all before this point. Appx1579 ( lines 20-23). He testified that "I never knew him." Appx1582 (line 2). Plaintiff testified that none of his county employees objected to Ayres providing

cybersecurity services because "he was saving our bacon." Appx1611 (lines 13-17).

The March 2, 2020 termination letter accuses Plaintiff of "misrepresentation and/or providing incomplete, misleading or incorrect information." Appx1197 and Appx1198.

When asked at her deposition what Plaintiff did that qualified as misrepresentation or the providing of incomplete, misleading or incorrect information, Defendant McKevitt replied that Plaintiff failed to disclose an ongoing state investigation into Ayres. Appx1254 (lines 16-24). Defendant McKevitt claimed Plaintiff did not disclose the state investigation into Ayres to her when she started in February of 2020. Appx1255 (lines 1-13). Defendant McKevitt was asked if Plaintiff had in fact disclosed the existence of the state investigation to his supervisor previously, and she replied that she did not know. Appx1255 (lines 14-17). She also testified she *believed* Plaintiff *had disclosed* the investigation to his supervisor. Appx1255 (lines 16-17).

Defendant McKevitt also testified as follows:

> Q. If he disclosed the investigation by the state to his prior
>
> > supervisor and then did not disclose it to you at a later time, is it your contention that that would be falsification?
>
> A. Misrepresentation, not falsification.

Q. Did you ever affirmatively ask him if there was a state investigation?

A. *I don't recall.*

Appx1256 (lines 12-23) (emphasis added).

Plaintiff *had* disclosed the state investigation into Ayres to his supervisor, David Boscola. In fact, David Boscola actually *introduced* Plaintiff to the state investigators the day they visited the county to conduct interviews.  Appx1458 (lines 13-25) and Appx1459 (lines 1-5).   David Boscola was interviewed by the State Ethics Commission regarding Robert Ayres in the beginning of 2020. Appx1459 (lines 13-22).  Plaintiff was interviewed on the same day. *Id.* David Boscola was aware Plaintiff was being interviewed *and actually took the state investigators up to Plaintiff's office.* Appx1458 (lines 18-22) and Appx1459 (lines 1-5).  Plaintiff did not fail to disclose the investigation.  *Boscola knew about it already.*

The March 2, 2020 termination letter accuses Plaintiff of providing "incomplete, misleading or incorrect information." Appx1197 and Appx1198.

Asked what incomplete, misleading or incorrect information Plaintiff provided, Defendant McKevitt responded that she *could not recall* without having her "notes".  Appx1256 (line 24) and Appx1257 (lines 1-4).  Defendant McKevitt then testified that she *had* no "notes".  Appx1257  (lines 12-13).  No "notes" of Defendant McKevitt have ever been produced by Defendants.

24

Defendant McKevitt later testified again (after a break to speak to her counsel) that she recalled *no* incomplete, misleading or incorrect information that Plaintiff provided.   Appx1263 (lines 3-6).   The allegation to the contrary in Plaintiff's termination letter is unsupported.

The March 2, 2020 termination letter accuses Plaintiff of "[i]nsubordination, including refusal to perform work required by a supervisor." Appx1197 and Appx1198.

When asked what Plaintiff did that was insubordinate or constituted refusal to perform work required by a supervisor, Defendant McKevitt referred to the alleged (but unproven and inadmissible) directive from Brian Hessenthaler to end the contract.   Appx1263 (lines 10-22).   Defendant McKevitt testified she did not recall if she *ever even spoke* to Brian Hessenthaler about this issue during her "investigation." Appx1263 (lines 19-22).

The March 2, 2020 termination letter accuses Plaintiff of "[f]ailure to report illegal/inappropriate activity."  Appx1197 and Appx1198.

When asked at her deposition what illegal or inappropriate activity Plaintiff failed to report, Defendant McKevitt replied *"I don't recall exactly what that was."* Appx1264 (lines 11-12) (emphasis added).

The March 2, 2020 termination letter accuses Plaintiff of "[r]efusing or failing to actively participate in an investigation in good faith." Appx1197 and

Appx1198. Asked what Plaintiff did that qualified as failure to participate in an investigation in good faith, Defendant McKevitt testified that she did not recall. Appx1264 (lines 21-24). She also testified that she knew this answer at one time, and would not have anything to look at to refresh her memory since the information came from "conversations." Appx1265 (lines 1-6).

The March 2, 2020 termination letter accuses Plaintiff of "[u]nsatisfactory work performance as governed by departmental standards." Appx1197 and Appx1198. Asked at her deposition to identify the departmental standards Plaintiff violated, Defendant McKevitt testified that she did not recall. Appx1265 (lines 11-13).

The March 2, 2020 termination letter accuses Plaintiff of "[v]iolation of any HR Policies or departmental policies/procedures as noted in departmental standard operating procedures (SOP), handbook, manual, etc." Appx1197 and Appx1198. Asked which of the above- referenced polices Plaintiff violated, Defendant McKevitt replied that she did not recall. Appx1265 (lines 14-21).

The March 2, 2020 termination letter accuses Plaintiff of "[a]ction in any way that is detrimental to employee morale." Appx1197 and Appx1198. Asked what Plaintiff did that was detrimental to employee morale, Defendant McKevitt replied that she did not know. Appx1266 (lines 9-17).

The March 2, 2020 termination letter accuses Plaintiff of "[a]ction/conduct

that can be viewed as conduct unbecoming to a public employee." Appx1197 and Appx1198. Asked what Plaintiff did that qualified as action unbecoming a public employee, Defendant McKevitt referenced only his alleged failed to follow an instruction from Hessenthaler (an instruction that cannot even *be proven by* Defendants, *see supra)*, and entering an engagement with "someone he knew and then becoming part of an investigation into that company." Appx 1266 (lines 21-24) and Appx1267 (lines 1-3 and lines 9-12).

The falsity of the testimony by Defendant McKevitt that Plaintiff stated he and Ayres were friends has already been established through the notes of Defendant Bucks County's own attorney. *See supra.* It is unclear why "becoming part of" the state investigation into the vendor could possibly be action unbecoming a public employee, but in her testimony at Plaintiff's unemployment compensation hearing, Defendant McKevitt claimed that Plaintiff had failed to advise "his supervisors" of the state investigation. Appx1313 (lines 3-18). This was entirely untrue.

Asked what Plaintiff did wrong as regards the state investigation, Defendant McKevitt replied that she would not know that answer, and agreed that Plaintiff participated in the investigation when he was asked to do so. Appx1269 (lines 1-12).

The March 2, 2020 termination letter accuses Plaintiff of "[r]efusing to obey instructions properly issued by an employee's supervisor pertaining to work."

Appx1197 and Appx1198.   Asked what instructions Plaintiff allegedly failed to obey, Defendant McKevitt again referenced the alleged (and unproven) failure to end a contract with Ayres.  Appx1270 (lines 17-24). She could identify nothing else.  Appx 1270 (lines 23-24).

The March 2, 2020 termination letter accuses Plaintiff of "[f]ailure to abide by the County established Code of Conduct policy." Appx1197 and Appx1198. Asked what violation Plaintiff committed of the Code of Conduct Policy, Defendant McKevitt again referenced the alleged (and unproven) failure to end a contract with Ayres.  Appx1271 (lines 1-12).

Defendant McKevitt testified that when she met with the Commissioners to get approval for Plaintiff's termination, she gave them facts to support *each assertion* in the March 2, 2020 termination letter.  Appx1282 (lines 12-24) and Appx1283 (lines 13-19).  She testified that the commissioners were given each of the reasons in the March 2, 2020 termination letter, with explanations, before the termination was approved. Appx1280 (lines 12-24) and Appx1281 (lines 1-11). Asked why she could not produce the facts to support each assertion in the March 2, 2020 termination letter at her deposition if she had those facts available when she spoke to the commissioners, Defendant McKevitt replied (nonsensically) "I did." Appx1283 (lines 17-19).

f.    *The reasons for Plaintiff's termination as explained (or __not__ explained) by Defendant Kahn*

Defendant Kahn testified that Plaintiff's failure to cooperate in an "investigation" (as stated in Plaintiff's termination letter, *see* Appx1197 and Appx1198) allegedly involved the investigation by Defendant Bucks County, *not* the state ethics investigation into the Ayres.  Appx1380 (lines 15-20).  Defendant Kahn testified that Plaintiff gave false answers to "a number of questions" in the February 21, 2020 meeting. Appx1380 (lines 4-8) Appx1381 (lines 10-19).

Asked which questions Plaintiff answered falsely in the meeting, Defendant Kahn testified that "I don't remember all of them."   Appx1381 (lines 20-21).  Defendant Kahn also testified that Plaintiff "falsely" stated that no one had raised objections about the County doing business with the vendor in question and that Plaintiff could not explain why this was not the case.  Appx1381 (lines 21-24) and Appx1382 (lines 1-13). *But Plaintiff did explain it.* Virginia Hardwick's notes of the February 21, 2020 meeting document the fact that Plaintiff had told Brian Hessenthaler of an issue regarding what he felt was an improper "finder's fee" being paid to Ayers - and that Plaintiff also raised it with Kay Weeder and Don Williams of the Bucks County Solicitor's Office.  Appx1358.

Asked what else Plaintiff said in the February 21, 2020 meeting that was false, Defendant Kahn could offer nothing (but still continued to maintain later in his deposition that Plaintiff "was untruthful with us").  Appx1388 (line 21).  He

testified as follows:

> Q.    Anything else that he did that was dishonest in the meeting with you, Ms. McKevitt and Ms. Hardwick?
>
> A.    *Yes.*
>
> Q.    Go ahead.  Tell me what that is.
>
> A.    *I don't remember.*

Appx1383 (lines 20-24) and Appx1384 (lines 1-2) (emphasis added).

Defendant Kahn also referenced the (inadmissible hearsay) "order" allegedly given by Brian Hessenthaler, but admitted he did not even know when it was allegedly given.  Appx1386 (lines 23-24) and Appx1387 (line 1).  Defendant Kahn claims Defendant McKevitt advised Plaintiff he was placed on administrative leave at the February 21, 2020 meeting.  Appx1388 (lines 9-12).  Plaintiff has testified that Defendant *Kahn* actually advised him he was being placed on leave.  Appx1786 (lines 11-12).

Asked if Plaintiff mentioned his medical leave or his cancer during the February 21, 2020 meeting, Defendant Kahn testified he was "not certain." Appx1389 (lines 8-11).  Asked if Plaintiff mentioned his upcoming cancer surgery (scheduled to occur three days after the meeting) during the February 21, 2020 meeting, Defendant Kahn testified "I don't remember." Appx1389 (lines 17-22).

Defendant McKevitt and Defendant Kahn – and no one else - provided information to the commissioners during their discussion of Plaintiff's termination.

Appx1393 (lines 4-13).

### g.    *Defendant McKevitt's false testimony at Plaintiff's unemployment hearing*

Plaintiff contends he was placed on leave and terminated from the employ of Defendant Bucks County because he made good faith reports of "wrongdoing" (violations of federal and/or state statutes and/or regulations) as that term is defined in 43 P.S.§ 1422; and/or "waste" (conduct or omissions which resulted in substantial abuse, misuse, destruction, or loss of funds belonging to or derived from Commonwealth or political subdivision sources) as that term is defined in 43 P.S. § 1422. The report made by Plaintiff concerned a "finder's fee" issue concerning Ayers that Plaintiff felt was improper, and which he raised with Katherine Weeder (a former employee of the Bucks County Solicitor's office) and Don Williams (then the Bucks County Solicitor). The issue was discussed at the February 21, 2020 meeting at which Plaintiff was placed on administrative leave. In Plaintiff's words:

> [T]hey handed me an e-mail that I had directly given to the former solicitors and to the Ethics Commission where I learned that Mr. Ayers would be the recipient of finder's fees and they asked me why did I not bring that to anyone's attention at the county and I said I did. And Mr. Khan shook his head no and he said when I talk to Mr. Don Williams later on today and I will, will he concur with you, and these are my words and I said yes, he absolutely will. He shook his head no and he slid the piece of paper across and fired me.

Appx1755 (lines 23-24) and Appx1756 (lines 1-11).

At Plaintiff's July 21, 2020 unemployment hearing, Defendant McKevitt was

questioned about whether Plaintiff was asked about an issue involving a "finder's fee" sought by Ayres in the February 21, 2020 meeting.  She indicated he was asked, and *she falsely testified that that "he said he did not know anything about it."* Appx1309 (lines 27-29) (emphasis added).  She was also asked at the July 21, 2020 unemployment hearing whether Plaintiff said he had had discussions with the Solicitor's Office about the finder's fee in the February 21, 2020 meeting and falsely replied that he did not state that he had "at that time."  Appx1309 (lines 30-32).

The February 21, 2020 meeting notes of Virginia Hardwick and the testimony of Plaintiff both demonstrate that Plaintiff *did in fact know about the finder's fee,* had disclosed it long before, had never said he knew "nothing" about it, and that he had in fact taken the issue to Don Williams and Key Weeder of the solicitor's office out of concern it was not above board.  Appx1358, Appx1359, Appx1360, Appx 1361, Appx 1362, Appx 1363.  *See also* Appx1761 (lines 23-24) and Appx1762 (lines 1-12).

Ms. Hardwick's notes document the fact that Plaintiff discussed the finder's fee issue (and his prior raising of it) at length during the February 21, 2020 meeting.  For example:

> Joe
> Did you talk to Don about this while he was solicitor?
> **I talked to him about THIS (points to email).**

Appx1358 (emphasis in original);

***

Did you tell anyone in purchasing that Ayers would receive a finders' fee?

**Only told Kay Weeder and Don Williams. We went to Brian H with that email. This was in October, November.**

**Took the sept 13, 2019 email to them to know whether there was something illegal going on that we needed to extricate themselves from.**

**It did not pass the sniff test.**

**I wanted to know, If this was an illegal activity with the county, can we find a way out? They said it was not illegal.**

**He maintained his concern.**

**Kay took him to Don Williams. One of them went to Brian. They said it is not immoral, illegal, nothing to be concerned about.**

Appx1361 (emphasis and capitalization as in original).

Ms. Hardwick's notes also document the fact that on March 2, 2020, she spoke with Kay Weeder and Don Williams and Weeder acknowledged Plaintiff had spoken to her about the finder's fee issue (Plaintiff's employment was terminated the same day nonetheless):

**March 2, 2020**
**Kay weeder Don Williams**

Kay-
He had two concerns.
They may have kicked around whether it was illegal. Thinks the contract was being pulled.

Don - no way. If I saw the word "finders fee," I would say NO.

Appx1362, Appx1363 (emphasis and capitalization as in original).

In her testimony at the second session of Plaintiff's unemployment hearing on August 3, 2020, Ms. Weeder confirmed that *Plaintiff had raised the "finder's fee" issue with her* and that she had raised it with then-Solicitor Don Williams, who said it would have to be researched. Appx1850, Appx1851. At her deposition, Ms. Weeder also testified that Plaintiff came to her office and raised the issue of the "finder's fee", Appx1840, and that she raised the issue with Don Williams the next day. There were at least two discussions between Weeder and Williams about the issue. Appx1841 (lines 4-9). Plaintiff was present for at least one. Appx1844 (line 25) and 1842 (lines 1-18).

Ms. Weeder recalls Plaintiff telling her ". . . there's a finder's fee, *that doesn't seem right.* I just found out about this." Appx1843 (lines 13-14) (emphasis added); *see also* Appx1855 (lines 1-3). Weeder agreed with Plaintiff. Appx1843 (lines 15-16).

Defendant McKevitt also falsely testified at Plaintiff's unemployment hearing that he was terminated for: (a) not revealing a "relationship" with Ayers (for which there is no evidence, *see supra*) and (b) for failing to tell his supervisors about the state investigation of Ayers (which, based on David Boscola's testimony, is flatly untrue). Appx1313 (lines 3-17).

Plaintiff has testified he believes his FMLA leave and questioning of the "finder's fee" were the reasons for his termination. Appx1787 and Appx1789.

## V.    <u>SUMMARY OF ARGUMENT</u>

The District Court erred in granting summary judgment on Plaintiff's FMLA retaliation claim.  The issues of "adverse employment action" and "protected FMLA activity" were undisputed, and the District Court erred by evaluating causation under the "temporal proximity" standard using the date Plaintiff applied for FMLA leave (January 6, 2020), rather than the date he raised his FMLA leave and upcoming surgery in a meeting and was placed on administrative leave (February 21, 2020).   Under the circumstances of this case, where a change in County administration had just taken place, the decisionmakers who fired Plaintiff had started their jobs in early January, and there was no evidence as to when they learned of Plaintiff's FMLA leave prior to the February meeting, the date of that meeting was the appropriate date on which to calculate temporal proximity, leaving a time lapse of only 9 days between the meeting and Plaintiff's firing.  The District Court also disregarded extensive inconsistencies in the testimony of the relevant decisionmakers, and the reaction of one of them when advised of Plaintiff's FMLA leave (she "rolled her eyes"),  despite the fact that it was relevant to causation as well as to pretext (an issue the District Court never reached).  The District Court also erred in dismissing Plaintiff's section 1983 claim and allowing the individual Defendants to assert qualified immunity as a defense despite their failure to raise it as an affirmative defense.    Finally, the District Court erred in dismissing Plaintiff's

state law whistleblower claim without prejudice.  But for its erroneous decision granting summary judgment on Plaintiff's federal claims, it could properly maintain jurisdiction over the state law claim and should have done so.

# VI.  <u>ARGUMENT</u>

Because genuine issues of material fact remain to be decided by the jury in the instant case, the District Court erred in entering summary judgment for Defendants, and its Order granting summary judgment should be reversed.

### a.  <u>Standard of Review</u>

The Court of Appeals exercises plenary review of district court orders granting summary judgment, applying a standard identical to the one applied by the district court under Fed. R. Civ. P. 56(c).  *See, e.g., Haugh v. Allstate Ins. Co.,* 2003 U.S. App. LEXIS 3721, *8 (3rd Cir. February 28, 2003); *Northview Motors, Inc. v. Chrysler Motors Corp.,* 227 F.3d 78, 87-88 (3rd Cir. 2000).

Accordingly, an order entering summary judgment will stand only if it appears that "… there is no genuine issue as to any material fact …" and that the moving party "… is entitled to a judgment as a matter of law."  *See* Fed. R. Civ. P. 56(c). Pursuant to Fed.R.Civ.P. 56(c) summary judgment is appropriate only in cases "… where there is no genuine issue of material fact for the jury to decide."  *Coolspring Stone Supply v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3rd Cir. 1993).

In responding to a motion for summary judgment, the nonmoving party (the Appellant in this case) must produce evidence demonstrating the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 91 L. Ed. 2d 202, 106 S.Ct. 2505 (1986).  The burden always remains on the moving party,

however, to show that a rational trier of fact could not find for the non-moving party or parties and that there is therefore no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 89 L.Ed. 2d 538, 106 S. Ct. 1348 (1986).

In deciding a motion for summary judgment, the court must accept and believe the evidence of the non-movant as true. *Anderson,* 477 U.S. at 248-52.  The non-movant's evidence must be believed as true and any and all doubts must be resolved in that party's favor. *Eastman Kodak Co. v. Image Technological Services, Inc.,* 504 U.S. 451, 456, 119 L.Ed. 2d 265, 112 S.Ct. 2072, 2076 (1992).  On summary judgment, where the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3rd Cir. 1992), *cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993).  The court is also required to "view all facts and draw all reasonable inferences in favor of the nonmoving party." *Brosseau v. Haugen,* 543 U.S. 194, 195, 160 L.Ed. 2d 583, 125 S.Ct. 596, fn. 2 (2004).

Courts have noted that "[i]n employment discrimination cases, the summary judgment standard is 'applied with added rigor' because 'intent and credibility are crucial issues.'" *Walden v. St. Gobain Corp.,* 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) *citing to Stewart v. Rutgers, State Univ.,* 120 F.3d 426, 431 (3d Cir. 1997).

Rule 56 and the authorities interpreting it have set a high standard for the granting of summary judgment. Appellees did not satisfy that standard in the District Court, and the dismissal of Appellant's claims should be reversed.

**b.** **Summary Judgment Should Have Been Denied on Plaintiff's FMLA Retaliation Claim**

Claims of FMLA discrimination or retaliation, like claims under Title VII of the Civil Rights Act of 1964, are analyzed under the test developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). *See Stewart v. Rutgers,* 120 F.3d 426, 432 (3d Cir. 1997).

As this Court has noted:

> Briefly summarized, the *McDonnell Douglas* analysis proceeds in three stages. First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's [termination].[1] Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Jones v. School Dist. Of Philadelphia,* 198 F.3d 403, 410 (citing *McDonnell Douglas,* 411 U.S. at 802).

---

[1] The *McDonnell-Douglas* analysis is phrased in terms of denial of promotions, but is applied in the same manner to cases where, as here, the Plaintiff claims he was terminated for a discriminatory reason. *See, e.g., Jones v. City of Wilmington,* 299 F. Supp.2d 380, 394 n. 15 (D. Del. 2004).

Under *McDonnell Douglas, supra,* the precise analysis utilized may vary depending on the facts of a particular claim. *See, e.g., Matcak v. Frankford Candy & Chocolate Co.,* 136 F.3d 933,938 (3d Cir. 1997).   As the Court noted in *Matcak,* " . . . the *McDonnell Douglas* Court cautioned that there is no rigid formulation of a *prima facie case* and the requirements may vary with "differing factual situations." *Id.*

### i. <u>The law relating to FMLA retaliation claims.</u>

The FMLA makes it unlawful for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). This section provides the source for FMLA "retaliation" claims.  It is also unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA regime. 29 U.S.C. § 2615(a)(1). This Court has held that "[a]lthough neither provision expressly forbids employers from terminating employees 'for having exercised or attempted to exercise FMLA rights,' a Department of Labor regulation has interpreted the sum of the two provisions as mandating this result." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 301 (3d Cir. 2012).

"To succeed on an FMLA retaliation claim, a plaintiff must show that '(1) she invoked [his or] her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to [his or] her

invocation of rights.'" *Ross v. Gilhuly,* 755 F.3d 185, 193 (3d Cir. 2014)(*citing Lichtenstein,* 691 F.3d at 302).

Plaintiff can easily demonstrate the foregoing elements.

### ii.  Adverse employment action is established.

It is undisputed that Plaintiff's employment was terminated by Defendants. Defendants placed Plaintiff on administrative leave on February 21, 2020,  Appx 1196, and later fired Plaintiff on March 2, 2020. Appx1197.

Termination is unquestionably an adverse employment action, and this Circuit has noted as such.  *Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) (adverse employment action is a "significant change in employment status, such as hiring, *firing,* failing to promote, reassignment, or a decision causing a significant change in benefits")(emphasis added).

### iii.  Plaintiff's invocation of medical leave is established.

It is undisputed here that Plaintiff invoked his right to medical leave. Appx191 and Appx1194.  Moreover, Plaintiff has testified that his FMLA leave and upcoming cancer surgery were discussed in the February 21, 2020 meeting in which he was placed on administrative leave.  Appx1658 (lines 9-16) and Appx1786 (lines 15-16).

Defendants admit that, on January 8, 2020, Plaintiff sent an email stating that he would  need  to be out of the office on various dates for cancer treatment beginning on January 14, 2020. Appx0078 ¶ 68, *see also* Appx0668 (January 8,

2020 email chain). They also admit that on January 9, 2020, Plaintiff submitted a request for intermittent FMLA leave to the County's health insurance claims processor, Sedgwick. Appx078 (¶ 70), *see also* Appx0673. Finally, they admit that Plaintiff received a communication confirming approval of a Family and Medical Leave request. Appx0038, Appx0050 (¶ 42). Plaintiff was approved for intermittent Family and Medical Leave. Appx0038, Appx0050 (¶ 43). A January 17, 2020 request approval letter granted Plaintiff intermittent Family and Medical Leave for the period covering January 9, 2020 through July 9, 2020. Appx0038, Appx0050 (¶ 46).

### iv.    Causation was established.

In the FMLA retaliation context, where the "temporal proximity" between the protected activity and adverse action is "unusually suggestive," this Circuit has recognized that this "is sufficient standing alone to create an inference of causality and defeat summary judgment." *Lichtenstein, supra,* 691 F.3d at 307 (emphasis added). The *Lichtenstein* Court found that seven days between the protected activity and adverse action was "in the realm" of what the court had previously accepted as an unusually suggestive temporal proximity.

Here, the District Court noted that "[h]ere, the only contested issue is whether Jacobs has established that the adverse employment action was causally related to

his invocation of FMLA rights." Appx0021. The District Court granted summary

judgment based on a perceived lack of causation, noting that:

> Here, Jacobs submitted his FMLA request on January 9, 2020. The
> decision to place Jacobs on administrative leave occurred 43 days later,
> on February 21, 2020. The County terminated Jacobs' employment on
> March 2, 2020. Jacobs argues that he raised his medical leave and
> upcoming surgery during the February 21, 2020, meeting, and therefore
> the real temporal proximity is only 9 days. See Pl.'s Resp. at 32. This
> argument is misplaced, because "[c]ourts measure temporal proximity
> from the first date on which the litigant engaged in his protected
> activity." [citation omitted]. As such, January 9, 2020, is the operative
> start date and the court must evaluate the 43-day period between this
> date and the placement of Jacobs on administrative leave. The court
> does not find this 43-day gap to be unduly suggestive . . .

Appx0021.

There are several flaws in the District Court's analysis. First, Plaintiff's

administrative leave and termination came on the heels of a change in County

administration. New decisionmakers took over in early January of 2020. Defendant

Joseph Khan was first appointed as Solicitor on January 6, 2020. Appx0035, Appx0049

(¶ 22). Defendant Margaret McKevitt was first appointed as Chief Operating Officer

on January 6, 2020. Appx0036, Appx0049 (¶ 28). This was three days before

Plaintiff's January 9, 2020 FMLA request. Defendant McKevitt had heard Plaintiff

had cancer, Appx1224 (lines 7-8), and learned that Plaintiff was "out because he was

getting treatment." Appx1224 (lines 9-12). But she does not specifically recall *when*

she first learned Plaintiff was out on FMLA leave. Appx1224 (lines 19-21). We

know for sure (from Plaintiff's testimony) that she knew of the leave when Plaintiff

raised it in the February 21, 2020 meeting. Appx1658 (lines 9-16) and Appx1786 (lines 15-16). She also *rolled her eyes* when the subject came up. Appx1787 (lines 1-8). Viewing the facts in the light most favorable to Plaintiff, and given the circumstances of the February 20, 2021 meeting, *nine days* (not 43 days as the District Court found) is the appropriate period for temporal proximity purposes here. Courts have permitted "temporal proximity" to raise an inference of causation even where *a month* has passed since the leave request. *Long v. Spalding Auto. Inc.,* 337 F. Supp. 3d 485, 492, 2018 U.S. Dist. LEXIS 202096, *10, 2018 WL 6244755 (E.D. Pa. 2018)("[t]he close temporal proximity between Plaintiff's request for FMLA leave and his termination only a month later is sufficient to state a claim at this stage of the proceedings").

The temporal proximity between the FMLA request and grant and Plaintiff's suspension is sufficient to establish causation. But temporal proximity is not the only way to establish causation. A Plaintiff may also show " . . . a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007).

There is ample additional evidence here to establish causation.

First, three of the four participants in the February 21, 2020 meeting do not remember if Plaintiff's medical leave or surgery were discussed. Plaintiff has testified these topics *were discussed.* This is suspicious to say the least. The fact that

Plaintiff specifically recalls discussing his FMLA leave and his medical condition at the February 21, 2020 meeting and that none of the other meeting participants can rule out the fact that it was discussed, combined with the "eye-rolling" reaction of Defendant McKevitt (who admits she was a decisionmaker in this matter) when Plaintiff brought up his leave, is enough to infer there was a causal connection between Plaintiff's recent FMLA leave request and his termination.

But there is still more. The Defendants can't even get their stories straight as to *who* placed Plaintiff on administrative leave at the conclusion of the February 21, 2020 meeting. Defendant Kahn claims Defendant McKevitt advised Plaintiff he was placed on administrative leave at the meeting. Appx1388 (lines 9-12). Plaintiff has testified that Defendant *Kahn* actually advised him he was being placed on leave. Appx1786 (lines 11-12).

The District Court correctly noted that "[c]ourts have considered inconsistent reasons given by an employer for an employee's termination when analyzing the causation prong . . .", Appx0023 (citing *Atchison v. Sears,* 666 F. Supp. 2d 477, 492 (E.D. Pa. 2009)). However, it erred in concluding that " . . . the evidence Jacobs points to does not establish inconsistency." Appx0023. In so concluding, it failed to consider the *numerous failures* of Defendant McKevitt, *see* pp. 20-27, *supra,* and Defendant Khan 27-29, *supra,* to provide *any* factual justification or support for many of the bases set forth in Plaintiff's termination letter, and Defendant

McKevitt's patently false testimony at the unemployment hearing. *See* p. 29, *supra.* This evidence will be detailed *infra* in Plaintiff's discussion of pretext, but it may also be considered in establishing a *prima facie* case.

There is ample authority to the effect that the same evidence a plaintiff uses to establish a *prima facie* case may also be used to establish pretext. While the defense in employment discrimination cases often seeks to "compartmentalize" the evidence, a particular piece of evidence is not a "one-use" item. A plaintiff may rely on the same evidence in the *prima facie* case and the pretext analysis. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). In *Jalil,* the Third Circuit noted that summary judgment evidence need not be "compartmentalized," and that:

> Although [a] fact is important in establishing plaintiff's *prima facie* case, there is nothing preventing it from also being used to rebut defendant's proferred explanation [for its decision]. As we have stated before, the *McDonnell-Douglas* formula does not compartmentalize the evidence so as to limit its use to only one phase of the case. The plaintiff's evidence might serve both to establish a prima facie case and discredit a defendant's explanation.

*Jalil v. Avdel Corp., supra,* 873 F.2d 701, 708 n. 6 (3d Cir. 1989)(*citing Dillon v. Coles*, 746 F.2d 998, 1003 (3d Cir. 1984).

### v.  **Pretext was established.**

Although the District Court did not reach the issue, there was more than sufficient evidence in this case to demonstrate pretext and to merit denial of summary judgment.

This Court has found that where (as here) the employer has asserted a "bagful" of alleged reasons for an employee's termination (at least 10 in this case), the employee need not discredit them all to survive summary judgment (although Plaintiff can cast sufficient doubt on all the reasons Defendant has asserted). As this Court has stated:

> As we stated in *Fuentes,* the employee need not always offer evidence sufficient to discredit all of the rationales advanced by the employer. "If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." 32 F.3d at 764 n.7 (citations omitted) . . . In Fuentes, we explained that the rejection of *some* explanations may so undermine the employer's credibility as to enable a rational factfinder to disbelieve the *remaining* rationales, even where the employee fails to produce evidence particular to those rationales. 32 F.3d at 764 n.7.

*Tomasso v. Boeing Co.,* 445 F.3d 702, 707 (3d Cir. (2006)(emphasis added).

Here, Defendants raised *at least ten* reasons for the termination, Appx1197 and Appx1198, and could not support many of them. Plaintiff has easily discredited Defendants' claimed reasons for his termination.

The March 2, 2020 termination letter accuses Plaintiff of "dishonesty." Appx1197 and Appx1198. Defendant McKevitt could remember little if anything to support this claim, Appx1254 (lines 9-15), and gave false testimony on this issue that is flatly contradicted by Virginia Hardwick's meeting notes. Defendant McKevitt contends that Plaintiff told her and the others who attended the February

21 meeting at which he was placed on administrative leave that he and Ayres were "friends." Appx1253 (line 24), Appx1254 (lines 1-8), and Appx1268 (lines 16-20). Virginia Hardwick's notes document the fact that Plaintiff said "no" when asked if he and Ayres were friends.  *See* Hardwick notes at Appx1359.

The March 2, 2020 termination letter accuses Plaintiff of "misrepresentation and/or providing incomplete, misleading or incorrect information." Appx1197 and Appx1198.  When asked what Plaintiff did that qualified as misrepresentation or the providing of incomplete, misleading or incorrect information, Defendant McKevitt replied that Plaintiff failed to disclose an ongoing state investigation into Ayres. Appx1254 (lines 16-24). She claimed Plaintiff did not disclose the state investigation into Ayres to her when she started in February of 2020.  Appx1255 (lines 1-13). But she also testified she believed Plaintiff *had* disclosed the investigation to his supervisor, David Boscola.  Appx1255 (lines 16-17).  Of course, Boscola *actually introduced* Plaintiff to the state investigators the day they visited the county to conduct interviews.  Appx1458 (lines 13-25) and Appx1459 (lines 1-5).

The March 2, 2020 termination letter accuses Plaintiff of providing "incomplete, misleading or incorrect information." Appx1197 and Appx1198. Asked what incomplete, misleading or incorrect information Plaintiff provided, Defendant McKevitt responded that she could not recall without having her "notes".

Appx1256 (line 24) and Appx1257 (lines 1-4). Defendant McKevitt then testified that she had *no* "notes".  Appx1257  (lines 12-13).

Defendant McKevitt later testified again (after a break to speak to her counsel) that she recalled no incomplete, misleading or incorrect information that Plaintiff provided.   Appx1263 (lines 3-6).   The allegation to the contrary in Plaintiff's termination letter is unsupported.

The March 2, 2020 termination letter accuses Plaintiff of "[i]nsubordination, including refusal to perform work required by a supervisor." Appx1197 and Appx1198.  When asked what Plaintiff did that was insubordinate or constituted refusal to perform work required by a supervisor, Defendant McKevitt referred to the alleged (but unproven and inadmissible) directive from Brian Hessenthaler to end the contract.  Appx1263 (lines 10-22). Defendant McKevitt testified she did not recall if she *ever even spoke to Brian Hessenthaler* about this issue during her "investigation." Appx1263 (lines 19-22).

The March 2, 2020 termination letter accuses Plaintiff of "[f]ailure to report illegal/inappropriate activity."  Appx1197 and Appx1198.  When asked what illegal or inappropriate activity Plaintiff failed to report, Defendant McKevitt replied "I don't recall exactly what that was." Appx1264 (lines 11-12) (emphasis added).

The March 2, 2020 termination letter accuses Plaintiff of "[r]efusing or failing to actively participate in an investigation in good faith." Appx1197 and Appx1198.

49

Asked what Plaintiff did that qualified as failure to participate in an investigation in good faith, Defendant McKevitt testified that she did not recall.  Appx1264 (lines 21-24). She also testified that she knew this answer at one time, and would not have anything to look at to refresh her memory since the information came from "conversations."  Appx1265 (lines 1-6).

The March 2, 2020 termination letter accuses Plaintiff of "[u]nsatisfactory work performance as governed by departmental standards." Appx1197 and Appx1198.  Asked at her deposition to identify the departmental standards Plaintiff violated, Defendant McKevitt testified that she did not recall.  Appx1265 (lines 11-13).

The March 2, 2020 termination letter accuses Plaintiff of "[v]iolation of any HR Policies or departmental policies/procedures as noted in departmental standard operating procedures (SOP), handbook, manual, etc." Appx1197 and Appx1198.  Asked which of the above- referenced polices Plaintiff violated, Defendant McKevitt replied that she did not recall.  Appx1265 (lines 14-21).

The March 2, 2020 termination letter accuses Plaintiff of "[a]ction in any way that is detrimental to employee morale." Appx1197 and Appx1198.  Asked what Plaintiff did that was detrimental to employee morale, Defendant McKevitt replied that she did not know.  Appx1266 (lines 9-17).

The March 2, 2020 termination letter accuses Plaintiff of "[a]ction/conduct that can be viewed as conduct unbecoming to a public employee." Appx1197 and Appx1198. Asked what Plaintiff did that qualified as action unbecoming a public employee, Defendant McKevitt referenced only his alleged failed to follow an instruction from Hessenthaler (an instruction that cannot even be proven by Defendants, *see supra*), and entering an engagement with "someone he knew and then becoming part of an investigation into that company." Appx 1266 (lines 21-24) and Appx1267 (lines 1-3 and lines 9-12).

The falsity of the testimony by Defendant McKevitt that Plaintiff stated he and Ayres were friends has already been established through the notes of Virginia Hardwick. *See supra.* It is unclear why "becoming part of" the state investigation into the vendor could possibly be action unbecoming a public employee, but in her testimony at Plaintiff's unemployment compensation hearing, Defendant McKevitt claimed that Plaintiff had failed to advise "his supervisors" of the state investigation. Appx1313 (lines 3-18). This, again, was entirely untrue.

Asked what Plaintiff did wrong as regards the state investigation, Defendant McKevitt replied that she would not know that answer, and agreed that Plaintiff participated in the investigation when he was asked to do so. Appx1269 (lines 1-12).

51

The March 2, 2020 termination letter accuses Plaintiff of "[r]efusing to obey instructions properly issued by an employee's supervisor pertaining to work." Appx1197 and Appx1198. Asked what instructions Plaintiff allegedly failed to obey, Defendant McKevitt again referenced the alleged (and unproven) failure to end a contract with Ayres. Appx1270 (lines 17-24). She could identify nothing else. Appx 1270 (lines 23-24).

The March 2, 2020 termination letter accuses Plaintiff of "[f]ailure to abide by the County established Code of Conduct policy." Appx1197 and Appx1198. Asked what violation Plaintiff committed of the Code of Conduct Policy, Defendant McKevitt again referenced the alleged (and unproven) failure to end a contract with Ayres. Appx1271 (lines 1-12).

Defendant Kahn also failed to provide support for many of the alleged issues in Plaintiff's termination letter. He testified that Plaintiff's failure to cooperate in an "investigation" (as stated in Plaintiff's termination letter, *see* Appx1197 and Appx1198) allegedly involved the investigation by Defendant Bucks County, not the state ethics investigation into the Ayres. Appx1380 (lines 15-20). Defendant Kahn testified that Plaintiff gave false answers to "a number of questions" in the February 21, 2020 meeting. Appx1380 (lines 4-8) Appx1381 (lines 10-19).

Asked which questions Plaintiff answered falsely in the meeting, Defendant Kahn testified that "I don't remember all of them." Appx1381 (lines 20-21).

Defendant Kahn also testified that Plaintiff "falsely" stated that no one had raised objections about the County doing business with the vendor in question and that Plaintiff could not explain why this was not the case.  Appx1381 (lines 21-24) and Appx1382 (lines 1-13). *But Plaintiff did explain it* according to Virginia Hardwick's notes of the February 21, 2020 meeting.  Ms. Hardwick documents the fact that Plaintiff had told Brian Hessenthaler of an issue regarding what he felt was an improper "finder's fee" being paid to Ayers - and that Plaintiff also raised it with Kay Weeder and Don Williams of the Bucks County Solicitor's Office.  Appx1358.

Asked what else Plaintiff said in the February 21, 2020 meeting that was false, Defendant Kahn could offer nothing (but still continued to maintain later in his deposition that Plaintiff "was untruthful with us").  Appx1388 (line 21).  Asked to give examples, he said he could not remember. Appx1383 (lines 20-24) and Appx1384 (lines 1-2) (emphasis added).

At Plaintiff's July 21, 2020 unemployment hearing, Defendant McKevitt was questioned about whether Plaintiff was asked about an issue involving a "finder's fee" sought by Ayres in the February 21, 2020 meeting. She indicated he was asked, and she falsely testified that that "he said he did not know anything about it." Appx1309 (lines 27-29) (emphasis added). She was also asked at the July 21, 2020 unemployment hearing whether Plaintiff said he had had discussions with the

Solicitor's Office about the finder's fee in the February 21, 2020 meeting and falsely

replied that he did not state that he had "at that time." Appx1309 (lines 30-32).

The February 21, 2020 meeting notes of Virginia Hardwick and the testimony

of Plaintiff both demonstrate that Plaintiff did in fact know about the finder's fee,

had disclosed it long before, had never said he knew "nothing" about it, and that he

had in fact taken the issue to Don Williams and Key Weeder of the solicitor's office

out of concern it was not above board. Appx1358, Appx1359, Appx1360, Appx

1361, Appx 1362, Appx 1363. *See also* Appx1761 (lines 23-24) and Appx1762

(lines 1-12).

Ms. Hardwick's notes also document the fact that Plaintiff discussed the

finder's fee issue (and his prior raising of it) at length during the February 21, 2020

meeting. Appx1358, Appx1361, Appx1362, Appx1363.

In her testimony at the second session of Plaintiff's unemployment hearing on

August 3, 2020, Ms. Weeder confirmed that Plaintiff had raised the "finder's fee"

issue with her and that she had raised it with then-Solicitor Don Williams, who said

it would have to be researched. Appx1850, Appx1851. At her deposition, Ms.

Weeder also testified that Plaintiff came to her office and raised the issue of the

"finder's fee", Appx1840, and that she raised the issue with Don Williams the next

day. There were at least two discussions between Weeder and Williams about the

issue. Appx1841 (lines 4-9). Plaintiff was present for at least one.  Appx1844 (line 25) and 1842 (lines 1-18).

Ms. Weeder recalls Plaintiff telling her ". . . there's a finder's fee, that doesn't seem right. I just found out about this."  Appx1843 (lines 13-14) (emphasis added); see also Appx1855 (lines 1-3). Weeder agreed with Plaintiff.  Appx1843 (lines 15-16).

Defendant McKevitt also falsely testified at Plaintiff's unemployment hearing that he was terminated for: (a) not revealing a "relationship" with Ayers (for which there is no evidence, *see supra*) and (b) for failing to tell his supervisors about the state investigation of Ayers (which, based on David Boscola's testimony, is flatly untrue).  Appx1313 (lines 3-17).

There is more than sufficient evidence to establish pretext in this case.

### c.    <u>Summary Judgment Should Have Been Denied on Plaintiff's Section 1983 Claim</u>

It cannot be disputed that Defendant McKevitt and Defendant Kahn acted under color of state law in his dealings with Plaintiff. Neither Defendant Kahn nor Defendant McKevitt gave Plaintiff a reasonable opportunity to explain himself at the February 21, 2020 meeting and never spoke to him again before terminating his employment.

Given the undisputed facts surrounding Plaintiff' termination, genuine issues of material fact remain as to whether Defendants Khan and McDevitt acted to terminate Plaintiff's employment without affording him the due process to which he was entitled under the Fourteenth Amendment to the United States Constitution in that they denied him adequate notice, an opportunity to be heard, an explanation of their alleged evidence against him, and an opportunity to present his version of events as aforesaid. Indeed, under the facts of the instant case, Plaintiff received virtually *no process.* He certainly did not receive a hearing.

Defendants claim Plaintiff lied and committed fraud. A discharge from public employment that jeopardizes an employee's reputation, honor, or integrity gives rise to a liberty interest under the Fourteenth Amendment; and the opportunity for a name-clearing hearing must be afforded. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S. Ct. 2701, 2727, 33 L. Ed. 2d 548 (1972); *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L. Ed. 2d 515 (1971); *Freeman v. McKellar,* 795 F. Supp. 733, 738 (E.D. Pa. 1992).

Failure to prevail on a "property interest" claim (the type Defendants analyzed in their summary judgment brief in the District Court) does not bar a properly asserted *liberty* claim. *Brady v. Gebbie,* 859 F.2d 1543, 1553 (9th Cir. 1988), *cert. denied,* 489 U.S. 110, 109 S. Ct. 1577, 103 L. Ed. 2d 943 (1989). If a firing involves circumstances that cause special harm to the individual's reputation, and the

defendant does not give the employee an opportunity to clear his or her name, money damages are recoverable under 42 U.S.C. § 1983 for a Fourteenth Amendment liberty interest violation. *Owen v. Independence,* 445 U.S. 622, 633 n. 13, 100 S. Ct. 1398, 1406 n. 13, 63 L. Ed. 2d 673 (1980), *reh'g denied,* 446 U.S. 993, 100 S. Ct. 2979, 64 L. Ed. 2d 850 (1980). This implicates a constitutionally-protected liberty interest. A firing of the type Plaintiff experienced might preclude possibilities of future employment. *See Albright v. Oliver,* 975 F.2d 343, 346 (7th Cir. 1992); *Bartholomew v. Fischl,* 534 F. Supp. 161, 164 (E.D. Pa. 1981).

Defendants McKevitt and Kahn also asserted qualified immunity as a defense in their summary judgment motion, and the District Court allowed them to do so despite the fact that they had not pleaded it in their affirmative defenses. Appx0026. This Court  has long recognized that "[q]ualified immunity is an affirmative defense . . . and therefore under Rule 8(c) of the Federal Rules of Civil Procedure 2 it should be asserted in the appropriate responsive pleading." *See Eddy v. V.I. Water and Power Auth.,* 256 F.3d 204, 209 (3d Cir.2001)(citing *Karnes v. Skrutski,* 62 F.3d 485, 491 (3d Cir. 1995)). Defendants should not have been permitted to rely on this defense, since they failed to plead it (and, more importantly, to place it at issue during the extensive discovery in the instant case).  This was highly prejudicial to Plaintiff and merits denial of the defense entirely.

**c.     The District Court Should Not Have Dismissed Plaintiff's State Law Whistleblower Claim**

The District Court also erred in dismissing Plaintiff's state law Whistleblower Law claim without prejudice, Appx0030, because it improperly granted summary judgment on his federal claims for the reasons set forth *supra*.

## VII.  <u>CONCLUSION</u>

For the reasons set forth above, the district court erred in granting summary judgment to Defendants.  This Court should reverse the decision of the District Court and remand all of Plaintiff's claims for trial.

Respectfully submitted,

<u>S/ Wayne A. Ely</u>

Wayne A. Ely
Attorney for Appellant

November 14, 2022

# APPENDIX TABLE OF CONTENTS

## Volume 1 (Appended to Brief)

Docket Entries                                                                    1

June 22, 2022 Order Granting Summary Judgment                                     9

June 22, 2022 Summary Judgment Opinion                                           11

Notice of Appeal                                                                 32

## Volume 2

Plaintiff's Civil Action Complaint                                               33

Defendants' Answer and New Matter                                                47

Defendants' Motion for Summary Judgment                                          59

Defendants' Statement of Undisputed Material Facts                               61

Defendants' Brief in Support of Motion for Summary Judgment                      88

Defendants' Summary Judgment Exhibits                                           145

## Volume 3

Defendants' Summary Judgment Exhibits  (Continued)                              513

## Volume 4

Defendants' Summary Judgment Exhibits  (Continued)                              993

Defendants' Reply in Support of Motion for Summary Judgment                    1060

Plaintiff's Response to Defendants' Statement of
 Undisputed Material Facts                                                     1071

Plaintiff's Counterstatement of Material Facts                1082

Plaintiff's Brief in Opposition to Defendants'
 Motion for Summary Judgment                                 1112

Plaintiff's Summary Judgment Exhibit List                    1163

Plaintiff's Summary Judgment Exhibits                        1164

**Volume 5**

Plaintiff's Summary Judgment Exhibits  (Continued)           1364

**Volume 6**

Plaintiff's Summary Judgment Exhibits  (Continued)           1562

# United States District Court
## Eastern District of Pennsylvania (Allentown)
## CIVIL DOCKET FOR CASE #: 5:20-cv-04016-EGS

| | |
|---|---|
| Jacobs v. COUNTY OF BUCKS et al | Date Filed: 08/18/2020 |
| Assigned to: HONORABLE EDWARD G. SMITH | Date Terminated: 06/22/2022 |
| Case in other court:  USCA FOR THE THIRD CIRCUIT, 22-02327 | Jury Demand: Plaintiff |
| | Nature of Suit: 442 Civil Rights: Employment |
| USCA for the Third Circuit, 22-02347 | Jurisdiction: Federal Question |
| Cause: 28:1331 Fed. Question: Employment Discrimination | |

**Plaintiff**

**Donald Jacobs**                                represented by    **WAYNE A. ELY**
                                                                   59 ANDREA DRIVE
                                                                   RICHBORO, PA 18954
                                                                   215-801-7979
                                                                   Email: wayne3236@gmail.com
                                                                   *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**COUNTY OF BUCKS**                              represented by    **JEFFREY M. KOLANSKY**
                                                                   ARCHER & GREINER
                                                                   Three Logan Square
                                                                   1717 Arch Street, Suite 3500
                                                                   PHILADELPHIA, PA 19103-7393
                                                                   215-963-3300
                                                                   Email: jkolansky@archerlaw.com
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **ERIC INSUK YUN**
                                                                   ARCHER & GREINER, P.C.
                                                                   THREE LOGAN SQUARE
                                                                   1717 ARCH STREET, SUITE 3500
                                                                   PHILADELPHIA, PA 19103
                                                                   215-963-3300
                                                                   Fax: 215-963-9999
                                                                   Email: EYun@archerlaw.com
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **JEFFREY M. SCOTT**
                                                                   ARCHER & GREINER, P.C.
                                                                   Three Logan Square
                                                                   1717 Arch Street, Suite 3500
                                                                   PHILADELPHIA, PA 19103
                                                                   215-963-3300
                                                                   Fax: 215-963-9999

Email: jscott@archerlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOSEPH KHAN**                    represented by    **JEFFREY M. KOLANSKY**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **ERIC INSUK YUN**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **JEFFREY M. SCOTT**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**MARGARET MCKEVITT**              represented by    **JEFFREY M. KOLANSKY**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **ERIC INSUK YUN**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **JEFFREY M. SCOTT**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/18/2020 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0313-14501090.), filed by Donald Jacobs. (Attachments: # 1 Civil Cover Sheet, # 2 Case Management Track Form, # 3 Designation Form)(ELY, WAYNE) (Entered: 08/18/2020) |
| 08/18/2020 |  | DEMAND for Trial by Jury by Donald Jacobs. (fb) (Entered: 08/18/2020) |
| 08/18/2020 |  | Summons Issued as to COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT. Forwarded To: EMAILED TO PLAINTIFFS COUNSEL on 8/18/2020 (sg, ) (Entered: 08/18/2020) |
| 10/06/2020 | 2 | NOTICE of Appearance by JEFFREY M. KOLANSKY on behalf of COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT with Certificate of Service(KOLANSKY, JEFFREY) (Entered: 10/06/2020) |
| 10/06/2020 | 3 | NOTICE of Appearance by JEFFREY M. SCOTT on behalf of COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT with Certificate of Service(SCOTT, JEFFREY) (Entered: 10/06/2020) |
| 10/09/2020 | 4 | WAIVER OF SERVICE Returned Executed by Donald Jacobs. All Defendants. (ELY, WAYNE) (Entered: 10/09/2020) |
| 12/01/2020 | 5 | STIPULATION *For Extension of Time* by Donald Jacobs. (ELY, WAYNE) (Entered: |

| | | |
|---|---|---|
| 33 | | 12/01/2020) |
| 12/01/2020 | 6 | ORDER OF 12/1/20 THAT THE STIPULATION FOR AN EXTENSION OF TIME, JOINTLY, EXECUTED BY COUNSEL FOR ALL PARTIES (DOC. NO. 5) IS APPROVED AND THE DEFENDANTS SHALL HAVE UNTIL DECEMBER 18, 2020 TO FILE A RESPONSE TO THE COMPLAINT. SIGNED BY JUDGE: EDWARD G. SMITH ON 12/1/20. 12/1/20 ENTERED AND COPIES E-MAILED. (DT) (Entered: 12/01/2020) |
| 12/18/2020 | 7 | ANSWER to Complaint together with With Affirmative Defenses by COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT.(KOLANSKY, JEFFREY) (Entered: 12/18/2020) |
| 12/22/2020 | 8 | NOTICE INITIAL PRETRIAL CONFERENCE TO BE CONDUCTED VIA TELEPHONE Please be advised that an initial pretrial conference to be conducted via telephone before Judge Edward G. Smith in the above-captioned case has been scheduled for THURSDAY, JANUARY 21, 2021, at 10:00 a.m. Counsel for all the parties will use dial in number 1-571-353-2300 and use pin 363 973 916# to enter the conference call. (sres, ) (Entered: 12/22/2020) |
| 01/22/2021 | 9 | SCHEDULING ORDER OF 1/22/21 THAT THE PARTIES SHALL COMPLETE ALL DISCOVERY BY APRIL 21, 2021. DISPOSITIVE MOTIONS BY MAY 21, 2021; OPPOSITION BY JUNE 4, 2021; THE PARTIES SHALL EACH FILE BY JULY 6, 2021: PRETRIAL MEMORANDUM AND MOTIONS IN LIMINE. RESPONSES TO MOTIONS IN LIMINE BY JULY 13, 2021. ETC. A FINAL PRETRIAL CONFERENCE WILL BE HELD ON JULY 21, 2021 AT 1:00PM IN EASTON. ETC. JURY SELECTION SHALL TAKE PLACE IN PHILADELPHIA ON JULY 23, 2021 AT 9:30AM IN A COURTROOM TO BE DETERMINED. JURY TRIAL SHALL COMMENCE ON JULY 26, 2021 AT 9:00AM IN EASTON. THIS ORDER SHALL SERVE AS A FORMAL ATTACHMENT FOR TRIAL. THIS CASE IS REFERRED TO MAGISTRATE JUDGE: HEFFLEY FOR A SETTLEMENT CONFERENCE TO BE HELD ON MAY 3, 2021 AT 2:00PM. SIGNED BY JUDG: EDWARD G. SMITH ON 1/22/21. 1/22/21 ENTERED AND COPIES E-MAILED. (DT) (Entered: 01/22/2021) |
| 01/22/2021 | 10 | ORDER THAT A SETTLEMENT CONFERENCE WILL BE HELD ON 5/3/2021 AT 2:00 PM BEFORE MAGISTRATE JUDGE MARILYN HEFFLEY. SIGNED BY MAGISTRATE JUDGE MARILYN HEFFLEY ON 1/22/21. 1/22/21 ENTERED AND COPIES MAILED AND E-MAILED.(mbh, ) (Entered: 01/22/2021) |
| 04/12/2021 | 11 | STIPULATION *TO ENLARGE TIME* by COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT. (KOLANSKY, JEFFREY) (Entered: 04/12/2021) |
| 04/13/2021 | 12 | ORDER OF 4/13/21 THAT A TELEPHONE CONFERENCE WILL BE HELD ON APRIL 14, 2021 AT 3:00PM TO DISCUSS THE JOINT STIPULATION TO ENLARGE TIME (DOC. 11). SIGNED BY JUDGE: EDWARD G. SMITH ON 4/13/21. 4/13/21 ENTERED AND COPIES E-MAILED. (DT) (Entered: 04/13/2021) |
| 04/19/2021 | 13 | AMENDED SCHEDULING ORDER OF 4/19/21 THAT THE PARTIES SHALL COMPLETE ALL DISCOVERY BY JULY 21, 2021. THE PARTIES SHALL FILE ANY DISPOSITIVE MOTIONS BY AUGUST 20, 2021; RESPONSES BY SEPTEMBER 3, 3021. THE PARTIES SHALL EACH FILE BY OCTOBER 13, 2021: PRETRIAL MEMORANDUM AND MOTIONS IN LIMINE. ETC THE COURT WILL HOLD A FINAL PRETRIAL CONFERENCE ON OCTOBER 27, 2021 AT 1:00PM IN EASTON. JURY SELECTION WILL TAKE PLACE IN PHILADELPHIA ON OCTOBER 29, 2021 AT 9:30AM. COURTROOM TO BE DETERMINED. JURY TRIAL SET FOR NOVEMBER 1, 2021 AT 9:00AM IN EASTON. THIS ORDER SHALL SERVE AS A FORMAL ATTACHMENT. SIGNED BY JUDGE: EDWARD G. SMITH ON 4/19/21. |

| | | |
|---|---|---|
| 44 | | 4/19/21 ENTERED AND COPIES E-MAILED. (DT) FINAL PRETRIAL CONFERENCE SET FOR 10/27/2021 01:00 PM IN COURTROOM (Entered: 04/19/2021) |
| 04/22/2021 | 14 | AMENDED CONFERENCE ORDER. ORDER THAT A SETTLEMENT CONFERENCE IS SET FOR 8/3/21 AT 9:30 AM IN ROOM 3000 BEFORE MAGISTRATE JUDGE MARILYN HEFFLEY. SIGNED BY MAGISTRATE JUDGE MARILYN HEFFLEY ON 4/22/21. 4/22/21 ENTERED & E-MAILED.(fdc) (Entered: 04/22/2021) |
| 06/09/2021 | 15 | First MOTION to Amend/Correct *Complaint* filed by Donald Jacobs.Memiorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order, # 3 Exhibit Proposed Amended Complaint, # 4 Certificate of Service)(ELY, WAYNE) (Entered: 06/09/2021) |
| 06/23/2021 | 16 | NOTICE of Appearance by ERIC INSUK YUN on behalf of COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT with Certificate of Service(YUN, ERIC) (Entered: 06/23/2021) |
| 06/23/2021 | 17 | RESPONSE in Opposition re 15 First MOTION to Amend/Correct *Complaint* filed by COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order, # 4 Certificate of Service)(KOLANSKY, JEFFREY) (Entered: 06/23/2021) |
| 06/25/2021 | 18 | ORDER OF 6/25/21 THAT AFTER RECEIVING THE MOTION TO AMEND THE COMPLAINT FILED BY THE PLAINTIFF, DONALD JACOBS, (DOC. NO. 15) AND THE DEFENDANTS' RESPONSE IN OPPOSITION TO THE MOTION (DOC. NO. 17), IT IS HEREBY ORDERED THAT THE COURT WILL HOLD A TELEPHONE CONFERENCE ON JUNE 28, 2021 AT 1:00PM TO DISCUSS THE MOTION. ETC. SIGNED BY JUDGE: EDWARD G. SMITH ON 6/25/21. 6/28/21 ENTERED AND COPIES E-MAILED. (DT) (Entered: 06/28/2021) |
| 06/28/2021 | 19 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH Motion Hearing held on 6/28/21 re 15 First MOTION to Amend/Correct *Complaint* filed by Donald Jacobs Court Reporter: ESR. (dt, ) (Entered: 06/28/2021) |
| 07/20/2021 | 20 | ORDER THAT THE SETTLEMENT CONFERENCE SCHEDULED FOR 8/3/21 IS CANCELED; ETC.. SIGNED BY MAGISTRATE JUDGE MARILYN HEFFLEY ON 7/20/21. 7/20/21 ENTERED AND E-MAILED.(JL ) (Entered: 07/20/2021) |
| 07/23/2021 | 21 | SECOND AMENDED SCHEDULING ORDER: FINAL PRETRIAL CONFERENCE SET FOR 12/1/2021 10:00 AM IN Holmes 4th Floor BEFORE HONORABLE EDWARD G. SMITH. DISCOVERY DUE BY 8/23/2021. JURY SELECTION SET FOR 12/3/2021 09:30 AM IN Philadelphia BEFORE HONORABLE EDWARD G. SMITH. MOTIONS DUE BY 9/20/2021. MOTION IN LIMINE DUE BY 11/15/2021. PLAINTIFF PRETRIAL MEMO DUE BY 11/15/2021. DEFENDANT PRETRIAL MEMO DUE BY 11/15/2021. TRIAL DATE SET FOR 12/6/2021 09:00 AM IN Holmes 4th Floor BEFORE HONORABLE EDWARD G. SMITH.. SIGNED BY HONORABLE EDWARD G. SMITH ON 7/23/21. 7/23/21 ENTERED AND COPIES E-MAILED.(dt, ) (Entered: 07/23/2021) |
| 08/17/2021 | 22 | ORDER OF 8/17/21 THAT AFTER CONSIDERING THE PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (DOC. 15) AND THE DEFENDANTS' OPPOSITION TO THE MOTION TO AMEND THE COMPLAINT (DOC. NO. 17), IT IS HEREBY ORDERED THAT THE PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (DOC. NO. 15) IS DENIED. SIGNED BY JUDGE: EDWARD G. SMITH ON 8/17/21. 8/17/21 ENTERED AND COPIES E-MAILED. (DT) (Entered: 08/17/2021) |

| | | |
|---|---|---|
| 08/20/2021 | 23 | ORDER OF 8/20/21 THAT AFTER RECEIVING CORRESPONDENCE FROM PLAINTIFF'S COUNSEL INFORMING THE COURT THAT A DISCOVERY DISPUTE HAS ARISEN BETWEEN THE PARTIES, IT IS HEREBY ORDERED THAT THE COURT WILL HOLD A TELEPHONE CONFERENCE ON AUGUST 23, 2021 AT 10:00AM TO DISCUSS THE DISPUTE. ETC. SIGNED BY JUDGE:EDWARD G. SMITH ON 8/20/21. 8/20/21 ENTERED AND COPIES E-MAILED. (DT) (Entered: 08/20/2021) |
| 08/20/2021 | 24 | ORDER OF 8/20/21 THAT THE TELEPHONE CONFERENCE CURRENTLY SCHEDULED FOR AUGUST 23, 2021 AT 10:00AM IS RESCHEDULED TO AUGUST 23, 2021 AT 1:00PM. ETC. SIGNED BY JUDGE: EDWARD G. SMITH ON 8/20/21.8/20/21 ENTERED AND COPIES E-MAILED. (DT) (Entered: 08/20/2021) |
| 08/23/2021 | 25 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH: Telephone Conference held on 8/23/21. Court Reporter: None. (er, ) (Entered: 08/23/2021) |
| 08/24/2021 | 26 | THIRD AMENDED SCHEDULING ORDER: FINAL PRETRIAL CONFERENCE SET FOR 2/2/2022 10:00 AM IN Holmes 4th Floor BEFORE HONORABLE EDWARD G. SMITH. DISCOVERY DUE BY 9/23/2021. JURY SELECTION SET FOR 2/4/2022 09:30 AM IN Philadelphia BEFORE HONORABLE EDWARD G. SMITH. MOTIONS DUE BY 10/20/2021. MOTION IN LIMINE DUE BY 12/15/2021. PLAINTIFF PRETRIAL MEMO DUE BY 12/15/2021. DEFENDANT PRETRIAL MEMO DUE BY 12/15/2021. TRIAL DATE SET FOR 2/7/2022 09:00 AM IN Holmes 4th Floor BEFORE HONORABLE EDWARD G. SMITH.. SIGNED BY HONORABLE EDWARD G. SMITH ON 08/24/21. 8/24/21 ENTERED AND COPIES E-MAILED.(dt, ) (Entered: 08/24/2021) |
| 10/20/2021 | 27 | MOTION for Summary Judgment filed by COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT.Brief,Certificate of Service. (Attachments: # 1 Brief Brief in Support of Motion for Summary Judgment, # 2 Supplement Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, # 3 Text of Proposed Order Order, # 4 Exhibit A-CC, # 5 Certificate of Service Certificate of Service)(YUN, ERIC) (Entered: 10/20/2021) |
| 11/03/2021 | 28 | STIPULATION for Extension of Time to File *Summary Judgment Response* filed by Donald Jacobs..(ELY, WAYNE) Modified on 11/17/2021 (lvj, ). (Entered: 11/03/2021) |
| 11/05/2021 | 29 | ORDER THAT THE JOINT STIPULATION FOR AN EXTENSION OF TIME FOR THE PLAINTIFF TO FILE A RESPONSE TO THE DEFENDANTS MOTION FOR SUMMARY JUDGMENT (DOC. NO. 28 ) IS APPROVED AND ADOPTED; AND THE COURT WILL HOLD ORAL ARGUMENT ON THE DEFENDANTS MOTION FOR SUMMARY JUDGMENT (DOC. NO. 27 ) ON WEDNESDAY, DECEMBER 15, 2021, AT 1:00 P.M. AT THE HOLMES BUILDING, 101 LARRY HOLMES DRIVE, 4TH FLOOR, EASTON, PA 18042. SIGNED BY HONORABLE EDWARD G. SMITH ON 11/5/21. 11/5/21 ENTERED AND COPIES E-MAILED.(mas, ) (Entered: 11/05/2021) |
| 11/12/2021 | 30 | RESPONSE TO DEFENDANTS STATEMENT OF ALLEGEDLY UNDISPUTED MATERIAL FACTS re 27 MOTION for Summary Judgment filed by Donald Jacobs. (Attachments: # 1 Supplement Counterstatement of Material Facts, # 2 Memorandum Memorandum of Law, # 3 Text of Proposed Order Proposed Order, # 4 Certificate of Service Certificate of Service)(ELY, WAYNE) Modified on 11/16/2021 (tjd). (Entered: 11/12/2021) |
| 11/12/2021 | 31 | SUMMARY JUDGMENT OPPOSITION EXHIBITS 1-6 re 27 MOTION for Summary Judgment *Supplement - (Exhibits 1 through 6)* filed by Donald Jacobs. (Attachments: # 1 Exhibit 1 - Complaint, # 2 Exhibit 2 - Answer, # 3 Exhibit 3 - FMLA Approval, # 4 |

66

| | | |
|---|---|---|
| | | Exhibit 4 - Surgery Notification, # 5 Exhibit 5 - Admin Leave, # 6 Exhibit 6 - Termination Letter)(ELY, WAYNE) Modified on 11/16/2021 (tjd). (Entered: 11/12/2021) |
| 11/12/2021 | 32 | SSUMMARY JUDGMENT OPPOSITION EXHIBITS 7-8 re 27 MOTION for Summary Judgment *Supplement (Exhibits 7 and 8)* filed by Donald Jacobs. (Attachments: # 1 Exhibit 7 - McKevitt Deposition, # 2 Exhibit 8 - Rule 26 Disclosures)(ELY, WAYNE) Modified on 11/16/2021 (tjd). (Entered: 11/12/2021) |
| 11/12/2021 | 33 | SUMMARY JUDGMENT OPPOSITION EXHIBITS 9-10 re 27 MOTION for Summary Judgment *Supplement (Exhibits 9 and 10)* filed by Donald Jacobs. (Attachments: # 1 Exhibit 9 - 7-21-20 UC Transcript, # 2 Exhibit 10 - Hardwick Meeting Notes)(ELY, WAYNE) Modified on 11/16/2021 (tjd). (Entered: 11/12/2021) |
| 11/12/2021 | 34 | SUMMARY JUDGMENT OPPOSITION EXHIBITS 11-12 re 27 MOTION for Summary Judgment *Supplement (Exhibits 11 and 12)* filed by Donald Jacobs. (Attachments: # 1 Exhibit 11 - Kahn Deposition, # 2 Exhibit 12 - Boscola Deposition)(ELY, WAYNE) Modified on 11/16/2021 (tjd). (Entered: 11/12/2021) |
| 11/12/2021 | 35 | SUMMARY JUDGMENT OPPOSITION EXHIBITS 13-14 re 27 MOTION for Summary Judgment *Supplement (Exhibits 13, 14a, 14b, and 14c)* filed by Donald Jacobs. (Attachments: # 1 Exhibit 13 - Hardwick Deposition, # 2 Exhibit 14a - Plaintiff Deposition Volume 1, # 3 Exhibit 14b - Plaintiff Deposition Volume 2, # 4 Exhibit 14c - Plaintiff Deposition Volume 3)(ELY, WAYNE) Modified on 11/16/2021 (tjd). (Entered: 11/12/2021) |
| 11/12/2021 | 36 | SUMMARY JUDGMENT OPPOSITION EXHIBITS 15-16 re 27 MOTION for Summary Judgment *Supplement (Exhibits 15 and 16)* filed by Donald Jacobs. (Attachments: # 1 Exhibit 15 - 8-3-20 UC Transcript, # 2 Exhibit 16 - Weeder Deposition)(ELY, WAYNE) Modified on 11/16/2021 (tjd). (Entered: 11/12/2021) |
| 11/22/2021 | 37 | RESPONSE in Support re 27 MOTION for Summary Judgment filed by COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT. (KOLANSKY, JEFFREY) (Entered: 11/22/2021) |
| 12/08/2021 | 38 | ORDER OF 12/8/21 THAT THE ORAL ARGUMENT SCHEDULED FOR DECEMBER 15, 2021 WILL BE CONDUCTED VIA TELEPHONE. ALL DEADLINES SET BY THIS COURT'S THIRD AMENDED SCHEDULING ORDER ON 8/24/21 (DOC. 26) ARE STAYED PENDING THE RESOLUTION OF THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. SIGNED BY JUDGE: EDWARD G. SMITH ON 12/8/21. 12/8/21 ENTERED AND COPIES E-MAILED. (DT) (Entered: 12/08/2021) |
| 12/15/2021 | 39 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH Motion Hearing held on 12/15/21 re 27 MOTION for Summary Judgment filed by MARGARET MCKEVITT, COUNTY OF BUCKS, JOSEPH KHAN Court Reporter: ESR. (dt, ) (Entered: 12/15/2021) |
| 12/15/2021 | 40 | ORDER THAT AFTER HEARING ORAL ARGUMENT ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 27), IT IS HEREBY ORDERED THAT THE COURT WILL HOLD A TELEPHONE STATUS CONFERENCE ON DECEMBER 20, 2021 AT 1:00PM. ETC. SIGNED BY JUDGE: EDWARD G. SMITH ON 12/15/21. 12/15/21 ENTERED AND COPIES E-MAILED.(DT) (Entered: 12/15/2021) |
| 12/20/2021 | 41 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH. A Telephone Conference was held on 12/20/21, not on the record. (DT) (Entered: 12/20/2021) |
| 01/07/2022 | 42 | MOTION to Amend/Correct 27 MOTION for Summary Judgment filed by COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT.Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit E-1) (Entered: 01/07/2022) |

| | | |
|---|---|---|
| 01/13/2022 | 43 | ORDER OF 1/13/22 THAT AFTER RECEIVING THE DEFENDANTS' MOTION TO SUPPLEMENT THE MOTION FOR SUMMARY JUDGMENT (DOC. 42), IT IS HEREBY ORDERED TAHT THE COURT WILL HOLD A TELEPHONE CONFERENCE ON FRIDAY, JANUARY 14, 2022 AT 2:30PM. ETC. SIGNED BY JUDGE: EDWARD G. SMITH ON 1/13/22. 1/13/22 ENTERED AND COPIES E-MAILED. (DT) (Entered: 01/13/2022) |
| 01/24/2022 | 44 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH. A Telephone Conference was held on 1/14/22, Not on the record. (DT) (Entered: 01/24/2022) |
| 01/24/2022 | 45 | ORDER OF 1/24/22 THAT THE COURT WILL HOLD A TELEPHONE CONFERENCE ON FEBRUARY 1, 2022 AT 1:00PM. ETC. SIGNED BY JUDGE: EDWARD G. SMITH ON 1/24/22. 1/24/22 ENTERED AND COPIES E-MAILED. (DT) (Entered: 01/24/2022) |
| 01/24/2022 | 46 | STIPULATION re 42 MOTION to Amend/Correct 27 MOTION for Summary Judgment *(Stipulation for Extension to Respond)* by Donald Jacobs. (ELY, WAYNE) (Entered: 01/24/2022) |
| 01/24/2022 | 47 | ORDER OF 1/24/22 THAT PLAINTIFF DONALD JACOBS AND DEFENDANTS COUNTY OF BUCKS, JOSEPH KHAN AND MARGARET MCKEVITT, BY THEIR UNDERSIGNED COUNSEL, STIPULATE THAT THE TIME PLAINTIFF MAY RESPOND TO DEFENDANTS' MOTION TO SUPPLEMENT THEIR MOTION FOR SUMMARY JUDGMENT (ECF NO. 42) BY MONDAY, JANUARY 31, 2022. SIGNED BY JUDGE: EDWARD G. SMITH ON 1/24/22. 1/24/22 ENTERED AND COPIES E-MAILED. (DT) Modified on 2/4/2022 (dt). (Entered: 01/24/2022) |
| 01/25/2022 | 48 | ORDER OF 1/25/22 THAT DUE TO A SCHEDULING CONFLICT, IT IS HEREBY ORDERED THAT THE TELEPHONE STATUS CONFERENCE SCHEDULED FOR FEBRUARY 1, 2022 AT 1:00M IS RESCHEDULED TO FEBRUARY 4, 2022 AT 10:30AM. ETC. SIGNED BY JUDGE: EDWARD G. SMITH ON 1/25/22. 1/25/22 ENTERED AND COPIES E-MAILED. (DT) (Entered: 01/25/2022) |
| 01/31/2022 | 49 | RESPONSE in Opposition re 42 MOTION to Amend/Correct 27 MOTION for Summary Judgment filed by Donald Jacobs. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(ELY, WAYNE) (Entered: 01/31/2022) |
| 02/04/2022 | 50 | Minute Entry for proceedings held before HONORABLE EDWARD G. SMITH. A Status Conference was held via telephone on 2/4/22, Not on the record. (DT) (Entered: 02/04/2022) |
| 02/04/2022 | 51 | ORDER OF 2/4/22 THAT DEFENDANT'S MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD (DOC. 42) IS DENIED. SIGNED BY JUDGE: EDWARD G. SMITH ON 2/4/22. 2/4/22 ENTERED AND COPIES E-MAILED. (DT) (Entered: 02/04/2022) |
| 06/22/2022 | 52 | MEMORANDUM OPINION. SIGNED BY HONORABLE EDWARD G. SMITH ON 6/22/22. 6/22/22 ENTERED AND COPIES E-MAILED.(er) (Entered: 06/22/2022) |
| 06/22/2022 | 53 | ORDER THAT 1. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 27) IS GRANTED AS TO THE FMLA CLAIMS AGAINST THE DEFENDANTS IN COUNT I OF THE COMPLAINT, AND JUDGMENT IS ENTERED IN FAVOR OF THE DEFENDANTS AND AGAINST THE PLAINTIFF ON COUNT I OF THE COMPLAINT; 2. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 27) IS GRANTED AS TO THE 42 U.S.C. § 1983 CLAIMS AGAINST THE DEFENDANTS IN COUNT III OF THE COMPLAINT, AND JUDGMENT IS ENTERED IN FAVOR OF THE DEFENDANTS AND AGAINST THE PLAINTIFF ON COUNT III OF THE COMPLAINT; 3. THE PLAINTIFF'S PENNSYLVANIA WHISTLEBLOWER LAW STATE-LAW CLAIM AGAINST THE |

| | | |
|---|---|---|
| 88 | | DEFENDANTS IN COUNT II OF THE COMPLAINT IS DISMISSED WITHOUT PREJUDICE; AND 4. THE CLERK OF COURT SHALL MARK THIS CASE AS CLOSED. SIGNED BY HONORABLE EDWARD G. SMITH ON 6/22/22. 6/22/22 ENTERED AND COPIES E-MAILED.(er) (Entered: 06/22/2022) |
| 07/19/2022 | 54 | NOTICE OF APPEAL as to 53 Order (Memorandum and/or Opinion),,, by Donald Jacobs. Filing fee $ 505, receipt number BPAEDC-16052309. Copies to Judge, Clerk USCA, Appeals Clerk and (Attachments: # 1 Certificate of Service)(ELY, WAYNE) Modified on 8/9/2022 (mbh). (Entered: 07/19/2022) |
| 07/21/2022 | 55 | NOTICE of Docketing Record on Appeal from USCA re 54 Notice of Appeal (Credit Card Payment), filed by Donald Jacobs. USCA Case Number 22-2327 (rf, ) (Entered: 07/22/2022) |
| 07/22/2022 | 56 | NOTICE OF CROSS APPEAL by COUNTY OF BUCKS, JOSEPH KHAN, MARGARET MCKEVITT. Filing fee $ 505, receipt number APAEDC-16061978. (KOLANSKY, JEFFREY) (Entered: 07/22/2022) |
| 07/25/2022 | 57 | Notice of Docketing Record on Appeal from USCA re 56 Notice of Cross Appeal (Credit Card Payment) filed by MARGARET MCKEVITT, COUNTY OF BUCKS, JOSEPH KHAN. USCA Case Number 22-2347 (mbh) (Entered: 07/25/2022) |
| 08/05/2022 | 58 | ORDER of USCA as to 56 Notice of Cross Appeal (Credit Card Payment) filed by MARGARET MCKEVITT, COUNTY OF BUCKS, JOSEPH KHAN. (mbh). (Entered: 08/08/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/07/2022 14:16:44 | | | |
| **PACER Login:** | wely69670 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:20-cv-04016-EGS |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD JACOBS, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-4016 |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF BUCKS, JOSEPH KHAN, | : | |
| and MARGARET MCKEVITT, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

**AND NOW**, this 22nd day of June, 2022, after considering the defendants' motion for summary judgment (Doc. No. 27), the plaintiff's response in opposition to the motion and accompanying exhibits (Doc. Nos. 30, 31, 32, 33, 34, 35, 36), the defendants' reply in support (Doc. No. 37), and the arguments presented during the oral argument; and for the reasons set forth in the separately-filed memorandum opinion, it is hereby **ORDERED** as follows:

1. The defendants' motion for summary judgment (Doc. No. 27) is **GRANTED** as to the FMLA claims against the defendants in count I of the complaint, and judgment is **ENTERED** in favor of the defendants and against the plaintiff on count I of the complaint;

2. The defendants' motion for summary judgment (Doc. No. 27) is **GRANTED** as to the 42 U.S.C. § 1983 claims against the defendants in count III of the complaint, and judgment is **ENTERED** in favor of the defendants and against the plaintiff on count III of the complaint;

3. The plaintiff's Pennsylvania Whistleblower Law state-law claim against the defendants in count II of the complaint is **DISMISSED WITHOUT PREJUDICE**; and

1010

4.   The clerk of court shall mark this case as **CLOSED**.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONALD JACOBS,                               :
                                             :
                      Plaintiff,             :            CIVIL ACTION NO. 20-4016
                                             :
          v.                                 :
                                             :
COUNTY OF BUCKS, JOSEPH KHAN,                :
and MARGARET MCKEVITT,                       :
                                             :
                      Defendants.            :

## **MEMORANDUM OPINION**

Smith, J.                                                        June 22, 2022

This suit arises out of a county's termination of the plaintiff, its longtime chief information officer. Prior to the termination, the plaintiff had requested intermittent leave under the Family and Medical Leave Act ("FMLA") to obtain medical treatment and undergo surgery. Around the same time, the plaintiff attended a meeting with county employees and supervisors, including the county's chief operating officer ("COO") and the county solicitor, during which the plaintiff's involvement with a finder's fee issue was discussed. The finder's fee issue concerns a conflict of interest originating from a third-party actor, employed by the Commonwealth of Pennsylvania, who investigators determined to be simultaneously providing services to the county under the name of a private consulting firm.

During the meeting, the plaintiff not only discussed the issue with the finder's fee and answered questions about it, but also discussed his upcoming surgery. Some of the meeting's attendees concluded the plaintiff's answers had been dishonest regarding the finder's fee and recommended his termination. Shortly thereafter, and at least 43 days after the plaintiff requested FMLA leave, the county commissioners terminated his employment by unanimous vote.

The plaintiff subsequently commenced this action against the county, the county's COO, and the county solicitor, claiming that his termination stemmed from requesting FMLA leave, or alternatively, from his own, prior reporting of the finder's fee issue to county employees. The plaintiff asserts the termination amounted to (1) retaliation and interference under the FMLA (2) a violation of Pennsylvania Whistleblower Law, and (3) a violation of 42 U.S.C. § 1983.

The defendants have now moved for summary judgment on all counts in the complaint. As discussed at length below, the court finds that the defendants are entitled to summary judgment on the FMLA and section 1983 claims. Regarding the FMLA claims, the plaintiff (1) has abandoned any FMLA interference claim, and (2) is unable to establish a *prima facie* case of FMLA retaliation because he has not shown that there is a genuine issue of material fact as to whether the adverse employment action was causally related to his invocation of FMLA rights. As for the section 1983 claim, the COO and county solicitor are entitled to qualified immunity, as their conduct in the termination did not violate any constitutional right. Finally, with regard to the Pennsylvania Whistleblower state law claim, the court declines to exercise supplemental jurisdiction and will dismiss the claim without prejudice to the plaintiff pursuing it in the appropriate state court.

## I.  PROCEDURAL HISTORY

The plaintiff, Donald Jacobs ("Jacobs"), initiated this action by filing a complaint against the County of Bucks, Joseph Khan (County Solicitor), and Margaret McKevitt (County COO) ("the defendants") on August 18, 2020. *See* Doc. No. 1. On December 18, 2020, the defendants filed an answer and asserted affirmative defenses. *See* Doc. No. 7. With the pleadings being closed, the court held an initial pretrial conference with counsel on January 21, 2021, and entered an initial scheduling order on January 22, 2021. *See* Doc. Nos. 8, 9.

On June 9, 2021, Jacobs filed a motion to amend the complaint, which the defendants opposed on June 23, 2021. *See* Doc. Nos. 15, 17. The court held a telephonic hearing on the motion

on June 28, 2021, and subsequently denied the motion to amend on August 17, 2021. *See* Doc.

Nos. 19, 22.

The defendants filed the present motion for summary judgment on October 20, 2021. *See*

Doc. No. 27. Jacobs filed a response in opposition to the motion and separately filed exhibits on

November 12, 2021. *See* Doc. Nos. 30–36. Soon after, on November 22, 2021, the defendants filed

a reply brief in further support of their motion. *See* Doc. No. 37. The court held oral argument on

the motion on December 15, 2021. *See* Doc. No. 39. The defendants' motion for summary

judgment is now ripe for adjudication.

## II.    FACTUAL BACKGROUND

On July 5, 2005, the County hired Jacobs as a senior information-security ("IS") manager.

*See* Defs.' Statement of Undisputed Facts ("Defs.' Facts") at ¶ 1, Doc. No. 27-2; Pl.'s Resp. to

Defs.' Statement of Allegedly Undisputed Material Facts ("Pl.'s Resp.") at ¶ 1, Doc. No. 30.

Effective April 5, 2006, the County promoted Jacobs to the position of chief information officer

("CIO"), which Jacobs held until the County terminated his employment effective March 2, 2020.

*See* Defs.' Facts at ¶ 2; Pl.'s Resp. at ¶ 2. Jacobs' employment was a non-union, at-will position.

*See* Defs.' Facts at ¶ 3; Pl.'s Resp. at ¶ 3. As CIO, Jacobs' duties included, *inter alia*, directing the

priorities and work program within the information technology department, negotiating complex

proposals and contracts for the purchase of products and services, developing partnership

agreements, and fulfilling responsibilities assigned by other executives. *See* Defs.' Facts at ¶ 4;

Pl.'s Resp. at ¶ 4. Prior to his termination, Jacobs characterized his position by saying, "I run the

IT Department." *See* Defs.' Facts at ¶ 4; Pl.'s Resp. at ¶ 4.

In 2012, Jacobs became acquainted with Robert Ayers ("Ayers"), and thereafter worked

closely with him. *See* Defs.' Facts at ¶ 5; Pl.'s Resp. at ¶ 5. Ayers, in his capacity as a

Commonwealth employee, had assisted after the County experienced a malware cyber-attack in 2021. *See id*. At some point, Jacobs and Ayers had conversations which included Ayers expressing interest in providing services to the County in the future. *See* Defs.' Facts at ¶ 7; Pl.'s Resp. at ¶ 7. Jacobs was receptive to this suggestion because he thought Ayers' previous work for the County had been "wonderful." *See* Defs.' Facts at ¶ 7; Pl.'s Resp. at ¶ 7. Jacobs and Ayers had additional contact in 2016, when Ayers assisted the County following another cyber-attack. *See* Defs.' Facts at ¶ 8; Pl.'s Resp. at ¶ 8.

Following the 2016 cyber-attack, Jacobs advised his supervisors at the time, David Boscola ("Boscola") and Brian Hessenthaler ("Hessenthaler"), that the County needed to retain a cyber security consultant. *See* Defs.' Facts at ¶ 9; Pl.'s Resp. at ¶ 9. Subsequently, Jacobs, Boscola, and Hessenthaler discussed the impropriety of using Ayers for County work due to the potential conflict of interest presented by Ayers' employment with the Commonwealth. *See* Defs.' Facts at ¶¶ 10–11; Pl.'s Resp. at ¶¶ 10–11.[1] During these discussions, Hessenthaler told Jacobs that he did not want the County to employ Ayers. *See* Ex. C., Dep. of Pl., at ECF p. 65, Doc. No. 27-4 ("The closest I recall [Hessenthaler] ever saying we could not employ [Ayers] was [Hessenthaler] saying he didn't want him there at the County.").

As of late 2016, Jacobs knew, or had reason to know, that Ayers was providing services to the County through a private company called CyberRisk Services ("CRS"). *See* Defs.' Facts at ¶¶ 12–13; Pl.'s Resp. at ¶¶ 12–13.[2] This situation is the origin of the "finder's fee issue" subject to two investigations discussed at greater length below.

---

[1] The parties dispute the exact details of those conversations. The defendants claim that Hessenthaler told Jacobs that he did not want to retain Ayers due to a potential conflict of interest, and that Jacobs was aware that both Hessenthaler and Boscola opposed using Ayers for County work. *See* Def.'s Facts at ¶¶ 10–11; Pl.'s Resp. at ¶¶ 10–11. The plaintiff denies ever being given an explicit instruction. *See* Pl.'s Resp. at ¶ 10.

[2] Jacobs denies this fact. *See* Pl.'s Resp. at ¶¶ 12–13. However, Jacobs has failed to identify the asserted genuine dispute of material fact and to provide a citation to the specific portion of the record establishing the dispute, as required by this court's policies and procedures. Instead, Jacobs issued a blanket denial and cited to its

Over the course of his employment with the County, Jacobs applied for and was granted FMLA leave on multiple occasions, including: June 19–23, 2006; May 6–23, 2012; intermittently between May 16 and November 16, 2013; September 3–22, 2013; intermittently between July 1, 2013, and May 16, 2014; and March 25 through April 21, 2014. *See* Defs.' Facts at ¶ 66; Pl.'s Resp. at ¶ 66. These periods of FMLA leave were granted separately from other non-FMLA leaves of absence taken by Jacobs. *See* Defs.' Facts at ¶ 67; Pl.'s Resp. at ¶ 67.

On January 8, 2020, Jacobs emailed various County employees, including Hessenthaler and Boscola, informing them that starting January 14, 2020, he would need to be out of the office for medical treatment on certain dates. *See* Defs.' Facts at ¶ 68; Pl.'s Resp. at ¶ 68. Several of the email's recipients responded, expressing their sympathies for Jacobs' medical issues and wishing him luck with treatment. *See* Defs.' Facts at ¶ 69; Pl.'s Resp. at ¶ 69. The next day, Jacobs submitted a request for intermittent FMLA leave to the County's health insurance claims processor. *See* Defs.' Facts at ¶ 70; Pl.'s Resp. at ¶ 70.

On January 10, 2020, Jacobs' FMLA leave request was granted subject to requirements, such as the receipt of certifications from Jacobs' healthcare provider. *See* Defs.' Facts at ¶ 71; Pl.'s Resp. at ¶ 71. One week later, the County's health insurance claims processor sent Jacobs a letter reminding Jacobs of the requirement that his healthcare provider must provide certifications by January 25, 2020. *See id*. Between January 15 and January 17, 2020, Jacobs emailed with a member of the County's human resources department, who told Jacobs that certain medical documentation needed to be submitted directly to the healthcare insurance claims processor. *See* Defs.' Facts at ¶ 72; Pl.'s Resp. at ¶ 72. On February 4, 2020, the healthcare insurance claims processor issued a letter to Jacobs denying the request for intermittent FMLA leave because it did

counterstatement of material facts. *See id.* The court thoroughly reviewed the cited portions of Jacobs' counterstatement and found no support from the record creating a genuine issue of material fact. *See id.* at ¶ 11.

not receive documentation from Jacobs' treating provider. *See* Defs.' Facts at ¶ 72; Pl.'s Resp. at ¶ 72. McKevitt, shortly before assuming the position of interim COO on February 14, 2020, learned from a co-worker that Jacobs had recently not attended a meeting due to receiving cancer treatment. *See* Defs.' Facts at ¶ 73; Pl.'s Resp. at ¶ 73.[3]

On January 16, 2020, shortly before the County denied the FMLA request, two special investigators for the Pennsylvania State Ethics Commission interviewed Jacobs in connection with an investigation into Ayers for "allegedly utilizing his position for private financial benefit while he was employed with the Commonwealth of Pennsylvania." *See* Defs.' Facts at ¶¶ 75, 76; Pl.'s Resp. at ¶¶ 75, 76. Around this time, the County initiated its own investigation into the finder's fee issue. *See* Defs.' Facts at ¶ 79; Pl.'s Resp. at ¶ 79.[4] The County personnel participating in this investigation included Margaret McKevitt, Joseph Khan, and Virginia Hardwick ("Hardwick") (respectively the interim County COO, County Solicitor, and an attorney from the Solicitor's Office). *See* Defs.' Facts at ¶ 79; Pl.'s Resp. at ¶ 79.

On February 21, 2020, Jacobs attended a meeting during which he was interviewed by McKevitt, Khan, and Hardwick. *See* Defs.' Facts at ¶ 82; Pl.'s Resp. at ¶ 82. The topics discussed in that meeting are heavily disputed. With the exception of Jacobs, no party to the meeting affirmatively remembers Jacobs' FMLA leave and upcoming cancer surgery being discussed at the meeting. *See* Defs.' Facts at ¶ 74; Pl.'s Resp. at ¶ 74. Jacobs remembers his cancer surgery being brought up, and McKevitt rolling her eyes in response. *See* Pl.'s Counterstatement of Material Facts at ¶ 41, Doc. No. 30-1. The finder's fee issue was discussed at length, with Jacobs

---

[3] Although Jacobs purports to deny this statement contained in the defendants' statement of undisputed material facts, *see* Pl.'s Resp. at ¶ 73, he does not include any references to the record that would contradict this statement. Instead, he appears to identify the portions of the record which support the defendants' statement, *see id.*

[4] While Jacobs claims that the investigation was "inadequate," Pl.'s Resp. at ¶ 79, he does not identify any evidence to show that an investigation did not occur. *See id.*

stating that he had previously raised the finder's fee issue with two members of the Bucks County Solicitor's Office, Kay Weeder and Don Williams. *See id.* at ¶ 139. In contrast, the County's investigation concluded, *inter alia*, that Jacobs had been dishonest in the February 21, 2020 meeting when answering questions about his knowledge of the situation surrounding Ayers. *See* Defs.' Facts at ¶¶ 83, 84; Pl.'s Resp. at ¶¶ 83, 84.

The February 21, 2020 meeting concluded with Jacobs being put on administrative leave pending further investigation. *See* Defs.' Facts at ¶ 82; Pl.'s Resp. at ¶ 82.[5] Soon thereafter, the County Commissioners unanimously voted to terminate Jacobs' employment. *See* Defs.' Facts at ¶ 93; Pl.'s Resp. at ¶ 93. On March 2, 2020, a letter was drafted, terminating Jacobs' employment and providing a variety of reasons for termination.[6] *See* Defs.' Facts at ¶ 92; Pl.'s Resp. at ¶ 92. As a result, Jacobs applied for unemployment benefits and initiated this suit on August 18, 2020. *See* Defs.' Facts at ¶ 94; Pl.'s Resp. at ¶ 94.

## III.    DISCUSSION

### A.    <u>Standard of Review – Motions for Summary Judgment</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J.*

---

[5] As with some of his other denials, Jacobs denies the defendants' statement, but he has not identified any evidence showing that following the February 21, 2020 meeting, the County placed Jacobs on administrative leave pending further investigation. *See* Pl.'s Resp. at ¶ 82.

[6] All of the reasons provided could be interpreted as applying to the finder's fee situation. The reasons include, *inter alia*, insubordination, dishonesty, failure to report illegal/inappropriate activity, falsification, violation of HR procedures, unsatisfactory work performance, etc. *See* Defs.' Facts at ¶ 93; Pl.'s Resp. at ¶ 93.

*State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute"). The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor"). Additionally, the non-

moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Thus, it is not enough to "merely [] restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745–46 (3d Cir. 2005) (citing *Celotex*, 477 U.S. at 322). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted). Further, when one party's claims are "blatantly contradicted by the record, so that no reasonable jury could believe it," the court should not take those claims as true for the "purposes of ruling on a Motion for Summary Judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Analysis

In their motion for summary judgment, the defendants argue that Jacobs (1) has not established a *prima facie* case of FMLA discrimination, (2) abandoned any claim of FMLA interference, (3) failed to state a claim for a section 1983 violation, or in the alternative, is barred by qualified immunity, and (4) cannot sustain the Pennsylvania Whistleblower Law claim. The court will address each of these arguments in turn.

### 1. FMLA Retaliation

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) [he] invoked h[is] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to h[is] invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012) (citation omitted). FMLA retaliation claims based on circumstantial evidence, such as the instant case, are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See id.* at 302; *see also Leathers v. GlaxoSmithKline, LLC.*, Civ. A. No. 2:19-cv-4939-JMG, 2021 WL 1837436, at *7 (E.D. Pa. May 7, 2021) (explaining certain retaliation claims are analyzed under *McDonnell Douglas* burden-shifting framework). Under *McDonnell Douglas*, a plaintiff must establish a *prima facie* case, at which point the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for its decision." *Lichtenstein*, 691 F.3d at 302 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer can meet that "minimal burden," the plaintiff must then identify some evidence from which a factfinder could "reasonably . . . disbelieve [the employer's] articulated legitimate reasons." *Id.* (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994)).

Here, the only contested issue is whether Jacobs has established that the adverse employment action was causally related to his invocation of FMLA rights. *See* Defs.' Br. in Supp. of Mot. for Summ. J. ("Defs.' Br.") at 28–31, Doc. No. 27-1. In determining whether a plaintiff has established a causal link, the court analyzes the following two factors: "(1) a showing that the two events were close in time or (2) evidence of ongoing antagonism toward the employee." *Capps v. Mondelez Glob. LLC*, 147 F. Supp. 3d 327, 336 (E.D. Pa. 2015), *aff'd*, 847 F.3d 144 (3d Cir. 2017).

Turning first to temporal proximity,

> [w]here temporal proximity is found to be unduly suggestive, this alone is sufficient to create an inference of causation. However, when the court finds that temporal proximity is not unduly suggestive, it must then determine whether the proffered evidence, taken as a whole, suffices to raise such an inference. At that time, the court may consider such additional evidence as acts of intervening antagonism, inconsistencies in the employer's articulated reasons for termination, or other evidence supporting an inference of retaliatory animus.

*Leathers*, 2021 WL 1837436, at *7 (internal citations omitted).

Here, Jacobs submitted his FMLA request on January 9, 2020. The decision to place Jacobs on administrative leave occurred 43 days later, on February 21, 2020. The County terminated Jacobs' employment on March 2, 2020. Jacobs argues that he raised his medical leave and upcoming surgery during the February 21, 2020, meeting, and therefore the real temporal proximity is only 9 days. *See* Pl.'s Resp. at 32. This argument is misplaced, because "[c]ourts measure temporal proximity from the first date on which the litigant engaged in his protected activity." *Capps*, 147 F. Supp. 3d at 337. As such, January 9, 2020, is the operative start date and the court must evaluate the 43-day period between this date and the placement of Jacobs on administrative leave. The court does not find this 43-day gap to be unduly suggestive, and fellow courts within this district have "routinely granted summary judgment in cases where several weeks

or months have elapsed between an employee's invocation of FMLA rights and the adverse employment action." *Leathers*, 2021 WL 18374336 at *8 (citing *Duncan v. Chester Cnty. Hosp.*, 677 F. App'x 58, 62 (3d Cir. 2017) (34 days not unduly suggestive); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("[A] gap of three months . . . without more, cannot create an inference of causation and defeat summary judgment."); *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) ("[A] temporal proximity greater than ten days requires supplementary evidence of retaliatory motive[.]"); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that three weeks was insufficient to raise inference of causation)).

The court also does not find a pattern of ongoing antagonism, despite Jacobs' argument to the contrary.

> A pattern of antagonism is gleaned from looking at the record as a whole and has been found where an employee is subject to a constant barrage of written and verbal warnings and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge, or is subject to [r]epeated violations for trivial matters and unusually close supervision following protected action[.] A pattern of antagonism, however, is more than a series of disciplinary actions; a plaintiff must offer [a] basis for linking the disciplinary actions to her [protected activity].

*Wells v. Retinovitreous Assocs., Ltd.*, Civ. A. No. 15-5675, 2016 WL 3405457, at *3 (E.D. Pa. June 21, 2016) (internal quotations and citations omitted), *aff'd*, 702 F. App'x 33 (3d Cir. 2017).

The defendants contend that not only is there an absence of any evidence of antagonism in the record, but there is also significant evidence of the defendants' support relating to Jacobs' FMLA requests. *See* Defs.' Br. at 30. For example, (1) Jacobs requested and received FMLA leave on multiple occasions prior to the 2020 FMLA request, (2) Jacobs' January 8, 2020 email regarding his upcoming surgery was met with supportive responses, and (3) the denial of FMLA leave in January 2020 occurred solely due to the lack of receipt of required certifications.

In arguing a pattern of antagonism exists, Jacobs contends it is suspicious that three individuals do not remember whether his upcoming cancer surgery was discussed in the February 21, 2020 meeting. Even coupled with McKevitt allegedly rolling her eyes during the meeting at the mention of Jacobs' cancer surgery, this evidence does not rise to the level of a pattern of antagonism.

Jacobs also argues that the "bagful" of reasons provided in his termination letter, coupled with the timing of his FMLA request and upcoming surgery, amount to inconsistency and pretext for discrimination. Although "[c]ourts have considered inconsistent reasons given by an employer for an employee's termination when analyzing the causation prong," *Atchison v. Sears*, 666 F. Supp. 2d 477, 492 (E.D. Pa. 2009) (citations omitted), the evidence Jacobs points to does not establish inconsistency. Instead, as mentioned above, all the reasons provided in the letter are consistent with the County's purported belief that Jacobs acted improperly in connection with the finder's fee issue. At bottom, looking at the record as a whole, the court does not find any evidence of an inference of retaliatory animus in connection with Jacobs' request for FMLA leave.

Finding neither temporal proximity, a pattern of antagonism, nor inconsistency in the County's reasons for termination, Jacobs has not identified sufficient facts (or a genuine issue of material fact) to show a causal connection between his termination and his invocation of FMLA rights. Accordingly, the court will grant the defendants' motion for summary judgment as to the FMLA retaliation claim.

### 2. FMLA Interference

The defendants argue that Jacobs has abandoned any FMLA interference claim included in the complaint. *See* Defs.' Br. at 40–41. In support of this position, the defendants offer one of Jacobs' responses to their interrogatories which states that "[t]his case does not concern a denial

of an FMLA leave request, but rather retaliation for having applied for and received such leave . . . ." *Id.* (citation omitted). Although the defendants believe this is sufficient in and of itself, they also contend that the court should grant summary judgment on any interference claim because it is an impermissible "repackaging" of the FMLA retaliation claim. *Id.* at 41.

After evaluating the complaint and response in opposition to the motion for summary judgment, the court agrees with the defendants that any FMLA interference claim originally brought by Jacobs has since been abandoned or incorporated into the FMLA retaliation claim. Jacobs' response in opposition to the motion for summary judgment does not deny the defendants' contention that he has abandoned any FMLA interference claim. *See generally* Pl.'s Resp. In addition, Jacobs' brief in opposition to the motion for summary judgment contains no designated section for an FMLA interference claim, despite having such sections for each other claim. *See, e.g.*, Pl.'s Mem. of Law in Resp. to Defs.' Mot. for Summ J. ("Pl.'s Mem.") at 28–51, Doc. No. 30-2. Jacobs' only reference to FMLA interference is included under the heading "The Law Relating to FMLA Retaliation Claims," and that section only addresses the elements of a *prima facie* case of FMLA retaliation. *See id.* at 29.

The elements for a *prima facie* case of FMLA retaliation and FMLA interference differ. *See Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (discussing *prima facie* elements of FMLA retaliation claims and FMLA interference claims). For an FMLA interference claim, a plaintiff must establish the following:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Id.* (citations omitted). As argued by the defendants, Jacobs has explicitly conceded that as to the fifth element of an interference claim, this case is not about the denial of FMLA leave, but instead concerns only FMLA retaliation.[7] Reviewing the record in the light most favorable to Jacobs as the non-moving party, the court finds no evidence to support that the defendants denied him any benefit he was entitled to under the FMLA. Accordingly, the court will grant summary judgment as to the FMLA interference claim.

### 3.    Section 1983 Claim

Jacobs also asserts a two-part claim for a violation of section 1983 against two of the defendants, Khan and McKevitt, alleging the termination violated his rights under both the First and Fourteenth Amendments. *See* Compl. at 12–13. Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

---

[7] For example, several of Jacobs' responses to interrogatories include, "[t]his case does not concern a denial of an FMLA leave request, but rather retaliation for having applied for and received such leave and violation of the Pennsylvania Whistleblower Act." Defs.' Ex. CC, Pl.'s Resp. to Defs.' First Set of Interrogs., at ECF p. 905, Doc. No. 27-4.

Here, Khan and McKevitt primarily argue that they are entitled to qualified immunity as to the section 1983 claim. *See* Defs.' Br. at 52–57. Jacobs' only argument in opposition is that the defendants failed to originally plead qualified immunity as an affirmative defense. *See* Pl.'s Mem. at 50.

As to qualified immunity, Jacobs is initially correct that, because it is an affirmative defense, "it ***should*** be asserted in the appropriate responsive pleading" under Rule 8(c) of the Federal Rules of Civil Procedure. *Eddy v. Virgin Islands Water and Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001) (emphasis added). Nonetheless, "the failure to [raise qualified immunity in the appropriate responsive pleading] does not automatically result in waiver." *Id.* (citations omitted); *see also Oliver v. Roquet*, 858 F.3d 180, 188 (3d Cir. 2017) (explaining that "there is no firm rule as to when a defendant must raise this affirmative defense" (citation and internal quotation marks omitted)). Thus, qualified immunity is not waived by a defendant who raises it later in a case, even after trial, so long as the plaintiff is not prejudiced. *Oliver*, 858 F.3d at 188 (citation omitted); *see also Eddy*, 256 F.3d at 209 ("Thus, [e]ven though a motion for summary judgment is not the most appropriate way to raise a previously unpled defense of immunity, in cases in which the plaintiff was not prejudiced, we have held that there was no waiver." (internal quotation marks and citations omitted)). Jacobs has not argued prejudice in this regard, *see* Pl.'s Mem. at 50, and the court finds none. Thus, it is evident that Khan and McKevitt are not barred from raising qualified immunity as a defense at the summary judgment stage.

"Qualified immunity is an affirmative defense available to government officials sued in their personal capacities." *Brown v. Cwynar*, 484 F. App'x 676, 680 (3d Cir. 2012). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v.*

*Cortesluna*, 142 S. Ct. 4, 7 (2021) (citation and internal quotation marks omitted). A right is clearly established "when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (citation and internal quotations marks omitted). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah, Okla. v. Bond*, 142 S. Ct. 9, 11 (2021) (citation and internal quotation marks omitted).

Here, Khan and McKevitt, in their respective roles as County Solicitor and COO, are government officials sued in their personal capacities for their alleged roles in Jacobs' termination. Thus, they are entitled to qualified immunity if their conduct did not violate a constitutional right of which a reasonable person would have known.

Beginning with Jacobs' First Amendment claim,

> [t]o prevail on a § 1983 First Amendment retaliation claim, the plaintiff must prove that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action.

*Palardy v. Twp. of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018) (citation and internal quotation marks omitted). Although Jacobs is a public employee, "[p]ublic employees do not renounce their First Amendment rights upon employment; however, 'the government's countervailing interest in controlling the operation of its workplaces' limits the First Amendment's ordinarily broad protections." *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015) (quoting *Lane v. Franks*, 573 U.S. 228, 235 (2014)). Public employees establish a First Amendment retaliation claim when they show that (1) the speech in question is protected by the First Amendment and, (2) "that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action." *Id.* (citing *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009)).

For the first prong,

> [a] public employee's statement is protected by the First Amendment when: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made."

*Id.* at 175 (quoting *Hill v. Borough of Kutztown,* 455 F.3d 225, 241–42 (3d Cir. 2006)). In determining whether an employee spoke as a private citizen, "the responsibility of a district court . . . is to ask whether the speech at issue was outside the scope of [the employee's] ordinary job responsibilities." *Id.* at 179 (citation and internal quotation marks omitted).

Here, the only potential speech alleged is Jacobs' disputed reporting of the finder's fee issue to two county employees, Weeder and Williams. Khan and McKevitt argue that because Jacobs' report owed its existence to Jacobs' responsibilities as CIO, Jacobs was not speaking as a private citizen in reporting the potential finder's fee issue. *See* Defs.' Br. at 49. While the court disagrees with the defendants' use of the "owes its existence to" and "related-to" standards, the court does find that Jacobs' alleged reporting of the finder's fee issue would fall within Jacobs' ordinary duties as CIO. The facts present here differ from cases in which an employee reported potential wrongdoing to a third-party or commenced a lawsuit against their employer. *See, e.g.*, *Flora*, 776 F.3d at 180 (vacating dismissal of Chief Public Defender's First Amendment claim against county-employer due to district court's use of 'related-to' test instead of 'scope of ordinary duties' test); *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 993 (3d Cir. 2014) (agreeing plaintiff spoke as private citizen in reporting potential employer's wrongdoing to outside newspaper).[8]

---

[8] In the alternative, the court finds that Jacobs abandoned his First Amendment retaliation claim by not addressing any of the defendants' arguments that he had failed to establish a *prima facie* case in his response in opposition to the motion for summary judgment. *See* Pl.'s Mem. at 49–51; *see, e.g.*, *McCowan v. City of Philadelphia*, Civ. A. No. 19-3326-KSM, 2022 WL 1557779, at *17 (E.D. Pa. May 17, 2022) ("Plaintiffs not only failed to mention constructive

Turning to Jacobs' Fourteenth Amendment due process claim, the Fourteenth Amendment to the United States Constitution protects against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest . . . [is] encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property.'" *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (alterations in original) (citing *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)).

After their review of the complaint, the defendants believed that Jacobs was alleging a deprivation of a property interest in continued employment. *See* Defs.' Br. at 50–52. However, in Jacobs' subsequent briefing, he contends that his discharge from public employment gave rise to a liberty interest because it jeopardized his reputation, honor, or integrity. *See* Pl.'s Mem. at 50.

For this type of Fourteenth Amendment argument,

[a] public employee who has been dismissed has a cognizable liberty interest under § 1983 when the dismissal is based upon charges which stigmatize the employee and the employer creates and disseminates a defamatory impression about the employee in connection with the termination. The defamation must occur in the course of terminating the individual's employment.

When a public employer has impugned an employee by defamatory remarks in the course of a termination, due process requires that the employer provide a name-clearing hearing. It is the failure of a public employer to provide a name clearing hearing that is an affront to the employee's due process rights. Thus, where due process has been denied, the appropriate remedy is to afford an aggrieved employee a name-clearing hearing.

discharge in the relevant section of their opposition brief, they provided no response to the City's argument that they had failed to identify a tangible employment action for purposes of hostile work environment. This failure alone supports a finding of abandonment[.]"); *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) ("[W]hen a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure constitutes an abandonment of th[o]se causes of action and essentially acts as a waiver of these issues." (citations and internal quotation marks omitted)).

*Freeman v. McKellar*, 795 F. Supp. 733, 738 (E.D. Pa. 1992) (internal citations and quotation marks omitted).

Here, there is no need to consider whether Khan and McKevitt disseminated a defamatory impression about Jacobs in the course of terminating his employment because "even a discharged employee must allege that he timely requested a hearing to clear his name and that the request was denied." *Id*. at 739. The record contains no allegation that Jacobs ever (1) requested such a hearing and (2) had that request denied.

The court having found that Khan and McKevitt's conduct amounts to neither a violation of the First nor Fourteenth Amendments, even in the light most favorable to Jacobs, it is unnecessary to determine whether any such constitutional violation was clearly established at the time of the termination. Khan and McKevitt are therefore entitled to qualified immunity on the section 1983 claim. Accordingly, the court will grant the defendants' motion for summary judgment as to that claim.

#### 4.      Pennsylvania Whistleblower Claim

Jacobs also asserts a claim for violation of the Pennsylvania Whistleblower Law. Having dismissed with prejudice Jacobs' federal claims, the court will not exercise supplemental jurisdiction over any state-law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."). As the Supreme Court instructs:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966). Here, the court finds no basis to retain supplemental jurisdiction over the state-law claim and will dismiss it without prejudice to Jacobs bringing the claim in the appropriate state court.

<h3 style="text-align:center">IV.    <u>CONCLUSION</u></h3>

Jacobs' FMLA request, without a causal link to his termination, cannot shield him from the County's power to terminate him for other, unprotected reasons. For the reasons set forth above, the court will grant summary judgment in favor of the defendants on the FMLA claim and the section 1983 claim. With no federal-law claim remaining, the court will dismiss without prejudice the state-law Pennsylvania Whistleblower Law claim.

A separate order follows.

BY THE COURT:

<u>/s/ *Edward G. Smith*</u>
EDWARD G. SMITH, J.

3232

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD JACOBS | : | |
| | : | CIVIL ACTION |
| | : | |
| *Plaintiff,* | : | |
| v. | : | |
| COUNTY OF BUCKS, | : | No. 5:20-cv-04016-EGS |
| | : | |
| JOSEPH KHAN, and | : | |
| | : | |
| MARGARET MCKEVITT | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

## NOTICE OF APPEAL

Plaintiff, Donald Jacobs, hereby appeals to the Third Circuit Court of Appeals from the District Court's final judgment and Order granting summary judgment and dismissing the above-captioned matter on June 22, 2022 at docket nos. 52 and 53.

Respectfully submitted,

 S/ Wayne A. Ely, Esquire

Wayne A. Ely, Esquire
Attorney for Plaintiff
59 Andrea Drive
Richboro, PA 18954
(215) 801-7979

July 19, 2022

1

## CERTIFICATION OF BAR MEMBERSHIP
## PURSUANT TO THIRD CIRCUIT RULE 46.1(e)

I hereby certify that I am a member of the bar of the United States Court of

Appeals for the Third Circuit.


By:    /s/ Wayne A. Ely
       Wayne A. Ely
       Attorney for Plaintiff/Appellant
       59 Andrea Drive
       Richboro, PA 18954

November 14, 2022

## CERTIFICATE OF COMPLIANCE
## REGARDING ELECTRONIC FILING, IDENTICAL TEXT,
## AND VIRUS CHECK

I hereby certify that the electronic and hard copies of Appellant's Brief in the instant matter contain identical text.

I also certify that a virus check was performed upon the electronic copy of the brief and attachments using Windows 10 Security, Version 1903, OS Build 18362.476.

By:   /s/ Wayne A. Ely
             Wayne A. Ely
             Attorney for Plaintiff/Appellant
             59 Andrea Drive

November 14, 2022         Richboro, PA 18954

**CERTIFICATE OF COMPLIANCE
PURSUANT TO FED.R.APP.P. 32(a)(7)(B)**

Pursuant to Fed.R.App.P. 32(a)(7)(B), I hereby certify that the Brief of Appellant in the instant matter complies with the 13,000-word type-volume limitation of Fed.R.App.P. 32(a)(7)(b)(i) in that, based on a word-count completed on the brief before filing using the Microsoft Word word-counting function, it contains 12,214 words.


By:    /s/ Wayne A. Ely
        Wayne A. Ely
        Attorney for Plaintiff/Appellant
        59 Andrea Drive
        Richboro, PA 18954

November 14, 2022

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of Appellant's Brief and Appendix were served upon the below individual(s) because they are registered with the Court's ECF system and will receive service via a Notice of Docket Activity (NDA).

Jeffrey Kolansky, Esquire
Attorney for Defendants
Archer
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103


By:    /s/ Wayne A. Ely
Wayne A. Ely
Attorney for Plaintiff/Appellant
59 Andrea Drive
Richboro, PA 18954

November 14, 2022