# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## No.  22-2327

---

## DONALD JACOBS,

### Plaintiff/Appellant,

### v.

## COUNTY OF BUCKS, JOSEPH KHAN and MARGARET MCKEVITT,

### Defendants/Appellees.

---

## REPLY BRIEF OF APPELLANT

---

**Appeal from the Order of Judgment entered
in the United States District Court
for the Eastern District of Pennsylvania
on June 22, 2022 at Civil Action No. 2:20-cv-4016**

---

**Wayne A. Ely, Esquire
59 Andrea Drive
Richboro, PA 18954
(215) 801-7979
Attorney for Appellant**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                      ii.

I.      ARGUMENT                                                          1.

   a.     Defendants cannot overcome the fact that there
          is no admissible evidence of the disputed
          Brian Hessenthaler "directive" they claim
          Plaintiff disobeyed.                                            1.

   b.     Defendants have not adequately explained
          the "bagful of reasons" asserted in Plaintiff's
          termination letter.                                            3.

   c.     Defendants cannot overcome Defendant McKevitt's
          false testimony at Plaintiff's unemployment hearing.   11.

   d.     Defendants cannot overcome the fact that the
          temporal proximity issue was incorrectly analyzed.     14.

II.     CONCLUSION                                                       16.

CERTIFICATES                                                      Appended.

_____

# <u>TABLE OF AUTHORITIES</u>

*Case Authorities*

*Long v. Spalding Auto. Inc.*
337 F. Supp. 3d 485 (E.D. Pa. 2018)                15

*Smith v. City of Allentown*
589 F.3d 684, 693 (3d Cir. 2009)                 1

_____

# I.  ARGUMENT

### a.  Defendants cannot overcome the fact that there is no admissible evidence of the disputed Brian Hessenthaler "directive" they claim Plaintiff disobeyed.

Defendant's' principal Brief has not adequately addressed the fact that, while Defendant McKevitt claimed Plaintiff was fired for failing to follow a directive from Brian Hessenthaler (former Chief Operating Officer of Defendant Bucks County) to end a contract with Cyber Risk Services in the third of fourth quarter of 2019,  Appx1236 (line 24) and Appx1237 (lines 1-7 and 11-12); *see also* Appx1307, lines 18-24, *Hessenthaler has not appeared* to confirm he ever gave an order to Plaintiff to end the contract.  All statements allegedly made by Brian Hessenthaler, referenced by other witnesses are hearsay, which is inadmissible on a motion for summary judgment. *See Smith v. City of Allentown,* 589 F.3d 684, 693 (3d Cir. 2009) ("[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment").

Plaintiff has denied he received an order to end the Cyber Risk contract from Hessenthaler and has explained that an RFP [Request for Proposal] was necessary (and was in process) to find a replacement for Cyber Risk Services. Appx1647 (lines 6-11) and Appx1615 (lines 16-19).  Asked if he ever received a direct order to end the contract, Plaintiff responded that " I don't recall him giving me strict instructions.  I recall him asking me to find a replacement, hence the RFP [Request

for Proposal]." Appx1647 (lines 7-13).

Asked he ever failed to do what Hessenthaler told him to do, Plaintiff testified that "I do not recall not doing what Mr. Hessenthaler told me to do. *I did exactly what he told me to do* and *it took about a year.* We had to write an RFP." Appx1647 (lines 16-20) (emphasis added). No memoranda, electronic mails, or any other documents have been produced by Defendants documenting *any direct order* from Hessenthaler to Plaintiff to end the Cyber Risk contract.

Plaintiff has also denied he ever received a direct order to end the contract from Dave Boscola.  Appx1653 (lines 1-14); *see also* Boscola's version of events at Appx1469 (lines 10-16).  Boscola, Defendant Bucks County's Chief Financial Officer, was Plaintiff's direct supervisor from October of 2010 through his firing, *see* Appx1451 (lines 7-8) and Appx1452 (lines 1-6).  Boscola testified he has never disciplined Plaintiff for any reason and also testified that he has no emails or other written directive(s) evidencing an order for Plaintiff to end the Cyber Risk contract. Appx1461 (lines 4-10).

As late as August 22, 2019, Defendant Bucks County's commissioners had also passed a resolution continuing the very contract Defendants now claim *Plaintiff* was responsible for terminating, Appx1462 (lines 6-11), because it was "prudent" to continue the contract.  Appx1462 (lines 21-23). Asked why the contract was continued, Boscola provided an explanation that confirms Plaintiff's

version of events (*see infra*), stating that "[t]he county, I guess, *was in need of those services for cybersecurity protection.* The county has to go through a -- somewhat of a lengthy process to secure a contract with somebody. And this - that was kind of like a segue to get from one consultant to another." Appx1463 (lines 14-19) (emphasis added). Boscola also testified that Plaintiff *could not have unilaterally ended* the Cyber Risk contract in any event. Appx1467 (lines 10-11).

### b. Defendants have not adequately explained the "bagful of reasons" asserted in Plaintiff's termination letter.

Plaintiff's March 2, 2020 termination letter identifies "multiple policy violations" that allegedly caused his separation. The letter purports to identify at least *ten*. Appx1197 and Appx1198. Defendants cannot overcome the failure to Joseph Khan and Margaret McKevitt to explain the bases underlying many of these alleged "violations". To wit:

**- "Dishonesty:"** When asked at her deposition what Plaintiff did that was "dishonest," Defendant McKevitt claimed he failed to disclose his relationship with the Robert Ayres, a vendor suspected of working for the County and the State at the same time. Appx1253 (lines 14-18). Defendant McKevitt contends that Plaintiff told her and the others who attended the February 21 meeting at which he was placed on administrative leave that he and Ayres were *"friends."* Appx1253 (line 24), Appx1254 (lines 1-8), and Appx1268 (lines 16-20) (emphasis added). However, Virginia Hardwick, the assistant solicitor who attended the February 21,

2020 meeting and took notes during it, documented the fact that Plaintiff said *"no"* when asked if he and Ayres were friends. *See* Hardwick notes at Appx1359. During her deposition, McKevitt could recall *nothing else* Plaintiff said that would qualify as "dishonesty." Appx1254 (lines 9-15). Plaintiff also confirmed that he and Ayres were not friends in his deposition. Appx1713 (lines 17-24); Appx1713 (lines 4-5).

- **"Misrepresentation and/or providing incomplete, misleading or incorrect information."** - When asked at her deposition what Plaintiff did that qualified as misrepresentation or the providing of incomplete, misleading or incorrect information, Defendant McKevitt replied that Plaintiff failed to disclose an ongoing state investigation into Ayres. Appx1254 (lines 16-24). She claimed Plaintiff did not disclose the state investigation into Ayres *to her* when she started in February of 2020. Appx1255 (lines 1-13). She was asked if Plaintiff had in fact disclosed the existence of the state investigation to his supervisor previously, and she replied that she did not know. Appx1255 (lines 14-17). She also testified she *believed* Plaintiff *had disclosed* the investigation to his supervisor. Appx1255 (lines 16-17).

Defendant McKevitt also testified as follows:

> Q. If he disclosed the investigation by the state to his prior
>
>    supervisor and then did not disclose it to you at a later
>    time, is it your contention that that would be

4

falsification?

A. Misrepresentation, not falsification.

Q. Did you ever affirmatively ask him if there was a state investigation?

A. *I don't recall.*

Appx1256 (lines 12-23) (emphasis added).

Plaintiff *had* disclosed the state investigation into Ayres to his supervisor, David Boscola. In fact, David Boscola actually *introduced* Plaintiff to the state investigators the day they visited the county to conduct interviews. Appx1458 (lines 13-25) and Appx1459 (lines 1-5). David Boscola was interviewed by the State Ethics Commission regarding Robert Ayres in the beginning of 2020. Appx1459 (lines 13-22). Plaintiff was interviewed on the same day. *Id.* David Boscola was aware Plaintiff was being interviewed *and actually took the state investigators up to Plaintiff's office.* Appx1458 (lines 18-22) and Appx1459 (lines 1-5). Plaintiff did not fail to disclose the investigation. *Boscola knew about it already.*

- **"Providing "incomplete, misleading or incorrect information."** - Asked what incomplete, misleading or incorrect information Plaintiff provided, Defendant McKevitt responded that she *could not recall* without having her "notes". Appx1256 (line 24) and Appx1257 (lines 1-4). Defendant McKevitt then testified that she *had* no "notes". Appx1257 (lines 12-13). No such "notes" have ever been

5

produced by Defendants.  Defendant McKevitt later testified again (after a break to speak to her counsel) that she recalled *no* incomplete, misleading or incorrect information that Plaintiff provided.  Appx1263 (lines 3-6).  The allegation to the contrary in Plaintiff's termination letter is unsupported.

- **"Insubordination, including refusal to perform work required by a supervisor."** -  When asked what Plaintiff did that was insubordinate or constituted refusal to perform work required by a supervisor, Defendant McKevitt referred to the above alleged (but unproven and inadmissible) directive from Brian Hessenthaler to end the contract.  Appx1263 (lines 10-22).  Defendant McKevitt testified she did not recall if she *ever even spoke* to Brian Hessenthaler about this issue during her "investigation." Appx1263 (lines 19-22).

- **"Failure to report illegal/inappropriate activity."** - When asked at her deposition what illegal or inappropriate activity Plaintiff failed to report, Defendant McKevitt replied *"I don't recall exactly what that was."* Appx1264 (lines 11-12) (emphasis added).

- **"Refusing or failing to actively participate in an investigation in good faith."** – Asked what Plaintiff did that qualified as failure to participate in an investigation in good faith, Defendant McKevitt testified that she did not recall. Appx1264 (lines 21-24).  She also testified that she knew this answer at one time, and would not have any materials to look at to refresh her memory since the

information came from "conversations." Appx1265 (lines 1-6).

- **"Unsatisfactory work performance as governed by departmental standards."** - Asked at her deposition to identify the departmental standards Plaintiff violated, Defendant McKevitt testified that she did not recall. Appx1265 (lines 11-13).

- **"Violation of any HR Policies or departmental policies/procedures as noted in departmental standard operating procedures (SOP), handbook, manual, etc."** - Asked which of the above- referenced polices Plaintiff violated, Defendant McKevitt replied that she did not recall. Appx1265 (lines 14-21).

- **"Action in any way that is detrimental to employee morale**." - Asked what Plaintiff did that was detrimental to employee morale, Defendant McKevitt replied that she did not know. Appx1266 (lines 9-17).

- **"Action/conduct that can be viewed as conduct unbecoming to a public employee."** - Asked what Plaintiff did that qualified as action unbecoming a public employee, Defendant McKevitt referenced only his alleged failed to follow the "directive" from Hessenthaler (an instruction that cannot even *be proven by* Defendants, *see supra)*, and entering an engagement with "someone he knew and then becoming part of an investigation into that company." Appx 1266 (lines 21-24) and Appx1267 (lines 1-3 and lines 9-12).

7

- **"Refusing to obey instructions properly issued by an employee's supervisor pertaining to work."** - Asked what instructions Plaintiff allegedly failed to obey, Defendant McKevitt again referenced the alleged (and unproven) failure to end a contract with Ayres.  Appx1270 (lines 17-24). She could identify nothing else.  Appx 1270 (lines 23-24).

- **"Failure to abide by the County established Code of Conduct policy."** - Asked what violation Plaintiff committed of the Code of Conduct Policy, Defendant McKevitt again referenced the alleged (and unproven) failure to end a contract with Ayres.  Appx1271 (lines 1-12).

Defendant McKevitt testified that when she met with the Commissioners to get approval for Plaintiff's termination, she gave them facts to support *each assertion* in the March 2, 2020 termination letter.  Appx1282 (lines 12-24) and Appx1283 (lines 13-19).  She testified that the commissioners were given each of the reasons in the March 2, 2020 termination letter, *with explanations,* before the termination was approved. Appx1280 (lines 12-24) and Appx1281 (lines 1-11).  Asked why she could not produce the facts to support each assertion in the March 2, 2020 termination letter at her deposition if she had those facts available when she spoke to the commissioners, Defendant McKevitt replied (nonsensically) "I did." Appx1283 (lines 17-19).

Defendant Kahn did not fare much better at his deposition.  He testified that

Plaintiff's failure to cooperate in an "investigation" (as stated in Plaintiff's termination letter, *see* Appx1197 and Appx1198) allegedly involved the investigation by Defendant Bucks County, *not* the state ethics investigation into the Ayres. Appx1380 (lines 15-20). Defendant Kahn testified that Plaintiff gave false answers to "a number of questions" in the February 21, 2020 meeting. Appx1380 (lines 4-8) Appx1381 (lines 10-19).

Asked which questions Plaintiff answered falsely in the meeting, Defendant Kahn testified that "I don't remember all of them." Appx1381 (lines 20-21). Defendant Kahn also testified that Plaintiff "falsely" stated that no one had raised objections about the County doing business with the vendor in question and that Plaintiff could not explain why this was not the case. Appx1381 (lines 21-24) and Appx1382 (lines 1-13). *But Plaintiff did explain it.* Virginia Hardwick's notes of the February 21, 2020 meeting document the fact that Plaintiff had told Brian Hessenthaler of an issue regarding what he felt was an improper "finder's fee" being paid to Ayers - and that Plaintiff also raised it with Kay Weeder and Don Williams of the Bucks County Solicitor's Office. Appx1358.

Asked what else Plaintiff said in the February 21, 2020 meeting that was false, Defendant Kahn could offer nothing (but still continued to maintain later in his deposition that Plaintiff "was untruthful with us"). Appx1388 (line 21). He testified as follows:

9

Q.     Anything else that he did that was dishonest in the meeting with you, Ms. McKevitt and Ms. Hardwick?

A.     *Yes.*

Q.     Go ahead.  Tell me what that is.

A.     *I don't remember.*

Appx1383 (lines 20-24) and Appx1384 (lines 1-2) (emphasis added).

Defendant Kahn also referenced the (inadmissible hearsay) "order" allegedly given by Brian Hessenthaler, but admitted he did not even know when it was allegedly given.  Appx1386 (lines 23-24) and Appx1387 (line 1).  Defendant Kahn claims Defendant McKevitt advised Plaintiff he was placed on administrative leave at the February 21, 2020 meeting.  Appx1388 (lines 9-12). Plaintiff has testified that Defendant *Kahn* actually advised him he was being placed on leave.  Appx1786 (lines 11-12).

Asked if Plaintiff mentioned his medical leave or his cancer during the February 21, 2020 meeting, Defendant Kahn testified he was "not certain." Appx1389 (lines 8-11).  Asked if Plaintiff mentioned his upcoming cancer surgery (scheduled to occur three days after the meeting) during the February 21, 2020 meeting, Defendant Kahn testified "I don't remember." Appx1389 (lines 17-22).

Defendant McKevitt and Defendant Kahn – and no one else - provided information to the commissioners during their discussion of Plaintiff's termination. Appx1393 (lines 4-13).

10

### c. Defendants cannot overcome Defendant McKevitt's false testimony at Plaintiff's unemployment hearing.

At Plaintiff's July 21, 2020 unemployment hearing, Defendant McKevitt was questioned about whether Plaintiff was asked about an issue involving a "finder's fee" sought by Ayres in the February 21, 2020 meeting. She indicated he was asked, and *she falsely testified that that "he said he did not know anything about it."* Appx1309 (lines 27-29) (emphasis added). She was also asked at the July 21, 2020 unemployment hearing whether Plaintiff said he had had discussions with the Solicitor's Office about the finder's fee in the February 21, 2020 meeting and falsely replied that he did not state that he had "at that time." Appx1309 (lines 30-32).

The February 21, 2020 meeting notes of Virginia Hardwick and the testimony of Plaintiff both demonstrate that Plaintiff *did in fact know about the finder's fee,* had disclosed it long before, had never said he knew "nothing" about it, and that he had in fact taken the issue to Don Williams and Key Weeder of the solicitor's office out of concern it was not above board. Appx1358, Appx1359, Appx1360, Appx 1361, Appx 1362, Appx 1363. *See also* Appx1761 (lines 23-24) and Appx1762 (lines 1-12).

Ms. Hardwick's notes document the fact that Plaintiff discussed the finder's fee issue (and his prior raising of it) at length during the February 21, 2020 meeting. For example:

> Joe
>
> Did you talk to Don about this while he was solicitor?
>
> **I talked to him about THIS (points to email).**

Appx1358 (emphasis in original);

<div align="center">***</div>

> Did you tell anyone in purchasing that Ayers would receive a finders' fee?
>
> **Only told Kay Weeder and Don Williams. We went to Brian H with that email. This was in October, November.**
>
> **Took the sept 13, 2019 email to them to know whether there was something illegal going on that we needed to extricate themselves from.**
>
> **It did not pass the sniff test.**
>
> **I wanted to know, If this was an illegal activity with the county, can we find a way out? They said it was not illegal.**
>
> **He maintained his concern.**
>
> **Kay took him to Don Williams. One of them went to Brian. They said it is not immoral, illegal, nothing to be concerned about.**

Appx1361 (emphasis and capitalization as in original).

Ms. Hardwick's notes also document the fact that on March 2, 2020, she spoke with Kay Weeder and Don Williams and Weeder acknowledged Plaintiff had spoken to her about the finder's fee issue (Plaintiff's employment was terminated the same day nonetheless):

> **March 2, 2020**
> **Kay weeder Don Williams**
>
> Kay-
> He had two concerns.

<div align="center">12</div>

> They may have kicked around whether it was illegal. Thinks the contract was being pulled.
>
> Don - no way. If I saw the word "finders fee," I would say NO.

Appx1362, Appx1363 (emphasis and capitalization as in original).

In her testimony at the second session of Plaintiff's unemployment hearing on August 3, 2020, Ms. Weeder confirmed that *Plaintiff had raised the "finder's fee" issue with her* and that she had raised it with then-Solicitor Don Williams, who said it would have to be researched. Appx1850, Appx1851. At her deposition, Ms. Weeder also testified that Plaintiff came to her office and raised the issue of the "finder's fee", Appx1840, and that she raised the issue with Don Williams the next day. There were at least two discussions between Weeder and Williams about the issue. Appx1841 (lines 4-9). Plaintiff was present for at least one. Appx1844 (line 25) and 1842 (lines 1-18).

Ms. Weeder recalls Plaintiff telling her ". . . there's a finder's fee, *that doesn't seem right.* I just found out about this." Appx1843 (lines 13-14) (emphasis added); *see also* Appx1855 (lines 1-3). Weeder agreed with Plaintiff. Appx1843 (lines 15-16).

Defendant McKevitt also falsely testified at Plaintiff's unemployment hearing that he was terminated for: (a) not revealing a "relationship" with Ayers (for which there is no evidence, *see supra*) and (b) for failing to tell his supervisors

about the state investigation of Ayers (which, based on David Boscola's testimony, is flatly untrue).  Appx1313 (lines 3-17).

### d. Defendants cannot overcome the fact that the temporal proximity issue was incorrectly analyzed.

The District Court noted in its summary judgment opinion that "[h]ere, the only contested issue is whether Jacobs has established that the adverse employment action was causally related to his invocation of FMLA rights." Appx0021.  The District Court granted summary judgment based on a perceived lack of causation. Appx0021.

Defendants' Brief fails to overcome the flaws in the District Court's analysis. First, Plaintiff's administrative leave and termination came on the heels of *a change in County administration.*  New decision makers took over in early January of 2020. Defendant Joseph Khan was first appointed as Solicitor on January 6, 2020. Appx0035, Appx0049 (¶ 22). Defendant Margaret McKevitt was first appointed as Chief Operating Officer on January 6, 2020. Appx0036, Appx0049 (¶ 28).  This was three days before Plaintiff's January 9, 2020 FMLA request. Defendant McKevitt had heard Plaintiff had cancer, Appx1224 (lines 7-8), and learned that Plaintiff was "out because he was getting treatment."  Appx1224 (lines 9-12).  But she does not specifically recall *when* she first learned Plaintiff was out on FMLA leave. Appx1224 (lines 19-21).  We know for sure (from Plaintiff's testimony) that she

14

knew of the leave when Plaintiff raised it in the February 21, 2020 meeting. Appx1658 (lines 9-16) and Appx1786 (lines 15-16). She also *rolled her eyes* when the subject came up. Appx1787 (lines 1-8). Viewing the facts in the light most favorable to Plaintiff, and given the circumstances of the February 20, 2021 meeting, *nine days* (not 43 days as the District Court found) is the appropriate period for temporal proximity purposes here. Courts have permitted "temporal proximity" to raise an inference of causation even where *a month* has passed since the leave request. *Long v. Spalding Auto. Inc.,* 337 F. Supp. 3d 485, 492, 2018 U.S. Dist. LEXIS 202096, *10, 2018 WL 6244755 (E.D. Pa. 2018)("[t]he close temporal proximity between Plaintiff's request for FMLA leave and his termination only a month later is sufficient to state a claim at this stage of the proceedings").

## II. <u>CONCLUSION</u>

For the reasons set forth above, the district court erred in granting summary judgment to Defendants.  This Court should reverse the decision of the District Court and remand all of Plaintiff's claims for trial.

<div style="margin-left:50%">

Respectfully submitted,

S/ Wayne A. Ely

Wayne A. Ely
Attorney for Appellant

</div>

January 18, 2023

**CERTIFICATION OF BAR MEMBERSHIP**
**PURSUANT TO THIRD CIRCUIT RULE 46.1(e)**

I hereby certify that I am a member of the bar of the United States Court of

Appeals for the Third Circuit.


By:    /s/ Wayne A. Ely
          Wayne A. Ely
          Attorney for Plaintiff/Appellant
          59 Andrea Drive
          Richboro, PA 18954

January 18, 2023

## CERTIFICATE OF COMPLIANCE
## REGARDING ELECTRONIC FILING, IDENTICAL TEXT,
## AND VIRUS CHECK

I hereby certify that the electronic and hard copies of Appellant's Reply Brief in the instant matter contain identical text.

I also certify that a virus check was performed upon the electronic copy of the brief and attachments using Windows 10 Security, Version 1903, OS Build 18362.476.

By:    /s/ Wayne A. Ely
Wayne A. Ely
Attorney for Plaintiff/Appellant
59 Andrea Drive
January 18, 2023          Richboro, PA 18954

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FED.R.APP.P. 32(a)(7)(B)**

Pursuant to Fed.R.App.P. 32(a)(7)(B), I hereby certify that the Reply Brief of Appellant in the instant matter complies with the 6,500-word type-volume limitation of Fed.R.App.P. 32 in that, based on a word-count completed on the brief before filing using the Microsoft Word word-counting function, it contains 3,244 words.

By:    /s/ Wayne A. Ely
       Wayne A. Ely
       Attorney for Plaintiff/Appellant
       59 Andrea Drive
       Richboro, PA 18954

January 18, 2023

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of Appellant's Reply Brief were served upon the below individual(s) because they are registered with the Court's ECF system and will receive service via a Notice of Docket Activity (NDA).

Jeffrey Kolansky, Esquire
Attorney for Defendants
Archer
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103

By:    /s/ Wayne A. Ely
Wayne A. Ely
Attorney for Plaintiff/Appellant
59 Andrea Drive
Richboro, PA 18954

January 18, 2023